LEAKE & HARVEY, ads., v. SUTHERLAND.

PROBATE COURT—*pleading.* Under our practice it is legitimate in the probate as well as in the justices' courts, for a defendant to appear, and, without any written or formal pleading, rely upon any meritorious defense.

Where the defendant sued in the probate court for *money* received in a *fiduciary capacity,* omits to plead formally, and the transcript therefore fails to show the exact ground taken by him, there arises a strong presumption that he set up all lawful defenses.

ADMINISTRATION OF ESTATES—*waiver of presentation of claims.* Where an administrator, sued in the probate court, appears and contests the claim, he *waives* the objection of want of prior presentation to him for allowance of the claim sued on.

LAW OF AGENCY—*agents' scope of authority—his power to receive Confederate money—time to account—his right and liabilities.*

The *presumption* is that the *agent* acts within the *scope of his authority.*

Where the *evidence* tends to show that an agent, appointed to hire, lease and sell property, receives Confederate money therefor, it is *presumed,* in the absence of proof on that point, that his principal authorized him to receive it.

If the principal authorizes the agent to receive Confederate money, *no* legal responsibility attaches to the agent for so doing.

The agent is not bound to account to the principal until the *time* fixed by the terms of the agency, or a *demand* by the principal. In such a case the commencement of the suit is a sufficient demand.

If the agent derives from the principal's property entrusted to him, any personal benefit, by use, sale or otherwise, he and his legal representatives are liable for the amount so received.

*Appeal from Ouachita Circuit Court.*

Hon. JOHN T. BEARDEN, Circuit Judge.

ENGLISH & WILSHIRE, for appellants.

GREGG, J.

This suit is founded upon a claim brought by the appellee against the appellants, in the probate court of Ouachita county, upon an account of $1,575, alleged to be due for money, by appellants' intestate, had and received.

Appellee alleges that deceased was her agent from '61 to '65, and, as such, received the money for servant hire, house rent, and property sold.

The claim was duly verified by affidavit, but the record shows no presentment of the claim to the administrators for allowance; but on the 10th of November, '66, the same was presented to the probate court. Both parties appeared and went to trial. Upon hearing the testimony, the court found for the appellee $975, that being the sum alleged to have been received for the piano, the furniture sold, and part of the house rent and negro hire. The appellants excepted to the finding, tendered their bill of exceptions, containing all the evidence, and appealed to the circuit court. Upon the presentation of the record and proceedings in that court, the judgment of the probate court was affirmed, and appellants appealed to this court, and here assign as error that the circuit court refused to try the cause *de novo*, and affirmed the judgment, when that court should have granted such new trial.

Under our practice it is legitimate, in the probate as well as justices' courts, for a defendant to appear, and, without any formal or written pleading, rely upon any and all meritorious grounds of defense. In this instance the defendants saw fit to avail themselves of this liberal practice; hence the court is not

fully advised of the exact grounds occupied by them in the court below, but, as they acted in a fiduciary capacity, the strongest reason exists to presume they set up all lawful defenses.

The first ground here assumed by appellants' counsel is, that the record does not show that the claim was ever presented to the administrators for allowance before proceedings were commenced in the probate court. There is nothing in this objection. The defendants appeared and contested the claim, and thereby the want of presentation, like the want of notice, was by them waived. *Madden, admr., v. The State Bank,* 13 *Ark.*, 276.

The evidence is all brought upon the record by bill of exceptions. It is insisted the finding of the probate court was not supported thereby.

The witness, Joseph J. Sutherland, testified that the deceased was the agent of the appellee in 1861–'2,–'3 and '4 ; that he, deceased, "sold the piano, charged in said bill of items, and he received the money, which was Confederate money," without stating how much money. Possibly the court can be sustained in finding upon that proof the $400 charged in the bill of items, upon the ground that the witness spoke of *the piano charged* and the *money*, referring to the account.

The next item of $100, for furniture sold, the court found fully proved upon the witness' statement that the deceased, " sold said furniture and received some money for it, but don't know how much it sold for, or what he received, but received all that it sold for." This proof, which was the only testimony bearing upon this point, was certainly insufficient to support the finding of $100 allowed by the court, and this alone was sufficient for the circuit court to have awarded a trial *de novo*. As to the other items found by the court in favor of the claimant, the testimony tended to show that the deceased had received in Confederate currency the amounts so found.

The evidence shows the deceased to have been the agent of the appellee in 1861–'2–'3 and '4, but for what purpose, and to

what extent that agency went, we are left to infer. If he was an agent, and performed acts, the legal presumption is, he acted within the scope of his authority; and therefore, in this case, was, by his principal, authorized to hire, lease and sell the property for the pretended currency shown to have been received by him.

An agent can derive no benefit from profits properly belonging to his principal; and, on the other hand, he is entitled to be indemnified against all losses, innocently sustained by him on his principal's account. *Story's Agency, secs.* 339 *and* 340.

If the principal directed or authorized him to sell her property for such currency, no legal responsibility could attach to him for so doing, and he was not, by the laws governing principal and agent, bound to account to her until a time fixed by the stipulations of his agency, or a demand made by the principal, neither of which events happened, so far as we can learn from the record, until the commencement of this suit, (that was, in effect, a demand). See *Taylor v. Spears,* 6 *Ark.,* 381, *and Warren v. Bridges, ib.,* 385.

If the deceased derived any personal benefit from appellee's property, by use, sale, or otherwise, he or his legal representatives are liable for the amount so received.

If the deceased, as agent, was authorized by the appellee to receive for her what purported to be Confederate States notes, an attempted currency, contrary to public policy put in circulation, though it may have had a purchasing force or conventional value in certain localities, she can not wait until such currency became utterly worthless every where and then hold her agent or his legal representatives bound for the nominal value of such notes.

The judgment of the Ouachita circuit court is reversed, and this cause remanded.

Chief Justice WILSHIRE, being disqualified, did not sit in the case.

Hon. WILLIAM STORY, special Chief Justice.