violation of law. The administration of justice in a due and orderly manner, and which means according to the rules established by statutes or otherwise, is essential to the protection and preservation of personal rights, and the rights of property, and the public welfare; and these rules cannot be departed from, although, in some special cases, there may be a seeming hardship arising from their due application.

The motion for the writ is granted.

Ordered accordingly.

---

# N. Y. COMMON PLEAS.

In re MARQUAND, Jr., assignee of FREDERICK W. COFFIN and WILLIAM ROSCOE LYON, composing the firm of COFFIN & LYON.

*Assignee — his duties as to the assigned estate — not allowed to use his position or the funds for his own gain.*

An assignee will not be allowed to make money for himself by his mismanagement of the assigned estate.

Where an assignee induced the creditors to release their claims against the assigned estate by means of a circular letter addressed to them, in which he stated that it was for their interest to accept a final dividend of fifteen per cent immediately, which dividend he was then able to pay, but doubted if so much would be paid if he withheld payment till the statutory time of one year from the date of the assignment should elapse, he paying such dividend out of the assets of the assigned estate and taking an assignment of such claims in the name of another person, he being the actual assignee of the claims of those who accepted the fifteen per cent:

*Held*, that the assignee should not be allowed the benefit or profits derived from the purchase of these claims in the manner described.

The proceedings of the assignee are unlawful and may be assailed or called in question not only by any creditor whose claim was bought, but by the creditors who have not been paid. Every purchase of the claim of a creditor for less than its ratable share of the assets is for the advantage of the other creditors and not for the advantage of the assignee; and the creditors, who have not been paid have the right to exact from the assignee every dollar he has made by the use of the trust funds for his own purposes.

*Special Term, July,* 1879.

In re Marquand.

*R. C. Elliott* and *Gleason & Cator*, for creditors.

*Albert Roberts*, for assignee.

Van Hoesen, *J.* — No fault is found with the proceedings of the assignee until he attempts to make money for himself by his management of the assigned estate. He conceived the idea of inducing the creditors of Coffin & Lyon to release their claims against the assigned estate for less than the estate would have yielded to them on an honest administration ; and to accomplish his purpose he addressed a circular letter to them, in which he stated that the law gave him seven months more time in which to settle the estate, and that it was for their interest to accept a final dividend of fifteen per cent immediately, which dividend he was then able to pay, but he doubted if so much would be paid if he exercised his right of withholding payment till the lapse of one year from the date of the assignment. Most of the creditors, upon receiving that letter, thought it prudent to accept Marquand's offer, and he then paid every creditor, except two who refused to listen to his proposal, fifteen per cent on the amount of his claim. He exacted, however, from every one he paid, an assignment of all demands against C. & L., against himself as assignee and against the assigned estate; the assignments were, as a rule, drawn in blank, and the name of a Mr. Roulon was afterwards written in; Roulon was acting as representative of Marquand, who was the actual assignee of the claims of the creditors who accepted the fifteen per cent. No money was paid except what came from the assets of the estate in his hands, save in a few instances where a refractory creditor refused to accept fifteen per cent, and where such a difficulty was encountered enough extra was paid by the assignee or his friends to obtain the assignment. The assignee now contends that he is entitled to whatever profits are to be derived from the purchase by him of these claims, in the manner which I have described. He admits that his proceedings were

unlawful and utterly indefensible if called in question by any creditor whose claim was bought; but insists that neither the court nor any other person than one who made an assignment can challenge the validity of his illegal transactions or prevent him from enjoying the fruits of his breach of trust. He plants himself upon the proposition that no one can assail the act of a trustee who defrauds his *cestui que trust* except the *cestui que trust* himself, and cites a case decided in the state of Mississippi to that effect. I have looked into that case, and I think that it has no bearing upon the point involved in this. If it had appeared in the Mississippi case that the executor had used moneys belonging to the estate in the purchase of legacies, it is not to be believed that the court would have decided that the executor was entitled to retain to his own use the profits of his purchase. It may well be that where a legacy is paid in full, the legatee so paid is not the proper party to call in question the acts of an executor who misconducts himself, but if legacies are subjected to an abatement any legatee whose legacy is reduced in amount has a right to call upon the executor to account for and to pay over any profit he has made by the use of the moneys of the estate in speculation. It matters not whether that speculation was in buying claims against the estate, in buying claims of legatees or in operations entirely disconnected from the business of the administrator; so in the case under consideration, the creditors who have not been paid have the right to exact from the assignee every dollar he has made by the use of the trust funds for his own purposes. Every purchaser of the claim of a creditor for less than its ratable share of the assets is for the advantage of the other creditors and not for the advantage of the assignee.

It is not now necessary to say what rule would be adopted if the assignee had used his own money in the purchase of claims; as for myself, my impression is that whether he uses his own money or the funds of the estate, he should not be

In re Marquand.

permitted to deal in any way likely to lead him into the temptation of making money out of his *cestui que trusts*.

Under the circumstances in this case I think that those creditors who were influenced to make the assignments by the letter of the assignee, should have an opportunity to present their claims for the balance due upon their ratable proportion of the assets. The statement of that letter was likely to frighten creditors into the acceptance of almost any offer which the assignee chose to make. A day should be fixed before which creditors who made assignments to Marquand, or to his representative Rulon, may present their claims for the balance remaining unpaid, and certify to their wish to undo their assignments. If they wish to undo their transfers they may share in the fund, but if they prefer to ratify their assignments the share they would otherwise receive will be distributed among the creditors. In any event the assignee must not profit by his misuse of the trust estate. Upon the application of any creditor, Marquand will be removed and a new assignee appointed to close the estate. For the time that Marquand was executing the duties of his office in good faith, he should receive compensation. It is true that the assignment act provides that the assignee shall receive as his commission five per cent, upon the moneys coming into his hands, but the statute is not to be so construed as to give the commissions, no matter how unfaithful or dishonest the assignee may be (3 *Wait's Law Actions and Defs.*, 248).

From the time he began to use his position for his own gain, he should not be allowed either his commissions or expenses. He should not be allowed any fees paid to his counsel, for obtaining the assignments, or for any service connected with the assignments, and no commissions should be paid to the assignee upon moneys which came into his hands after he issued his circular letter and entered upon the business of betraying his trust.