# SUPREME COURT OF JUDICATURE

##### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1889, IN THE SEVENTY-THIRD YEAR OF THE STATE.

---

### No. 11,772.

## THE MANHATTAN CLOAK AND SUIT COMPANY ET AL. *v.* DODGE ET AL.

INSOLVENT DEBTORS.—*Attorney for Assignee.—Borrowing Trust Funds.—Purchase of Claims.—Profits.*—Where the attorney for the assignee of insolvent debtors borrows trust funds from the assignee, and uses the money in purchasing claims against the debtors, which are afterwards filed against the estate and allowed by the assignee, he is bound to account to the estate for any profits realized by him in the transaction, although there may be no fraudulent purpose.

SAME.—*Replevin.— Value of Goods.—Judgment not Conclusive.*—Where some of the claims are purchased by the attorney from creditors who have brought an action to replevy goods sold to the insolvents, and he causes judgment to be entered in favor of the replevin plaintiffs, declaring that the goods are of the value stated in their affidavits, and then sells such goods at private sale on his own account, he is not concluded by the value as fixed by the judgment, but is only bound to account for the true value.

SAME.—*Interest.— When Assignee Chargeable with.*—The assignee of insolvent debtors is chargeable with interest on the funds in his hands from the

The Manhattan Cloak and Suit Company *et al. v.* Dodge *et al.*

time when, by the exercise of diligence, he could have secured an order declaring a dividend.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellants.

*H. C. Dodge, R. M. Johnson, E. G. Herr* and *J. I. Best,* for appellees.

ELLIOTT, C. J.—The assignee of insolvent debtors allowed claims against the estate of the insolvent, and made a report of his action. To this report the appellants, in the capacity of creditors, filed exceptions. Issues of fact were presented by the exceptions, evidence was heard and a decision entered against the appellants.

The attorney of the assignee of the insolvent debtors borrowed from the assignee trust funds, and paid him interest on the money borrowed. The assignee, in his report, fully accounted for the money loaned and the interest received from the borrower. The money thus obtained by the attorney was by him used in buying claims against the insolvent debtors, and these claims were, after the purchase by the attorney, filed against the insolvents' estate and were allowed by the assignee. The claims were bought by the attorney for a sum greatly below their face value.

We are clear that the attorney had no right to reap any profit from the purchases made by him with the trust funds. It was the duty of the court to require the assignee to account for the profits realized by his attorney. The position occupied by the latter imposed upon him the obligation to devote his labor and his talents to the service of the creditors whom the assignee represented. He had no right, occupying the position he did, to engage in buying claims for his individual benefit, and, as the assignee knew of the conduct of his attorney, he violated his duty in allowing him to secure more than the actual cost of the claims. Whatever profit accrued from the use of the trust funds by the attorney belonged, in equity, to the persons entitled to the funds. It

would violate plain principles of justice to permit the attorney of the assignee of an insolvent debtor to use the trust fund for his own profit. Trust funds are to be used for the benefit of the beneficiaries under the trust, and not for the benefit of anybody else.

It would be subversive of justice to permit an attorney of a trustee to use his position for his individual benefit, although he made no use of the trust funds, and we are satisfied that, even where an attorney purchases the claims of creditors with his own money he can obtain, at most, no more than the sum he actually paid for them. The policy of the law is to prevent an attorney from sacrificing the interests of his client for his own gain, and to carry into effect this policy the courts will not allow an attorney to take advantage of his position to the possible injury of his client. *Downard* v. *Hadley*, 116 Ind. 131 ; *In re Marquand*, 57 How. Pr. 477 ; *Ex Parte James*, 8 Vesey, Jr., 337.

The assignee of an insolvent debtor owes a duty to all of the creditors. He certainly can not be allowed to buy claims from creditors and reap a profit. The reason for this rule operates against the assignee's attorney, for he, as the trusted confidential adviser of the trustee, represents all of the beneficiaries. To him the assignee, as the representative of all the creditors, must look for advice, and that advice must come from an unbiased mind. He has no right to deal with them, or any of them, for his own benefit, for the instant he becomes interested he ceases to occupy the position which it is his duty to his clients to maintain. To permit the attorney to buy claims even with his own money, would open the way to fraud and wrong, and such ways it is the duty of the courts to tightly and securely close. The law means to keep attorneys from assuming positions where they may be tempted to prefer their own interests to those of their clients. To deter them from assuming such positions it sternly denies them the right to secure any profit from their transactions with their clients, and requires them to yield it to the trust

it was their duty to serve with undivided zeal and interest.

In cases of this character it is unnecessary to prove a corrupt design or fraudulent practices. The intention may be honest, and yet the act be wrongful in legal contemplation. The wrong emerges from the improper departure from duty, and is complete without an evil or fraudulent purpose.

The attorney bought claims with funds borrowed from the assignee, from Hood, Bonbright & Co., Bates, Reed & Cooley, and Mills & Gibbs, after they had brought an action to replevy goods sold by them to the insolvent debtors. After he purchased the claims he caused judgment to be entered in favor of the several replevin plaintiffs, declaring that the goods were of the value stated in the respective affidavits; that he afterwards took the goods so adjudged to belong to the several plaintiffs, and sold them at private sale on his own account, without having them appraised. The aggregate value fixed upon the goods in the replevin cases was $3,299.73, and the amount realized from the sale was $2,141.42. The counsel for the appellants contends that the value fixed by the judgment concludes the attorney, and that he must account to the estate for the value of the goods as fixed by the judgment. We can not so hold. The attorney was not bound to account for anything more than the true value of the goods he bought with the trust funds. He was chargeable with that, but with no more. If he did do wrong, as is probably true, the extent of the injury worked by his wrong was the loss actually sustained, and that could not be greater than the true value of the goods he received. The object of the law is not to punish the attorney in such cases as this, but to secure to the client full compensatory damages.

The assignee collected from the sale of the property of the insolvent debtors the following sums of money at the dates respectively mentioned: February 20th, 1883, $8,633.50; August 20th, 1883, $328.05; August 21st, 1883, $1,030; December 18th, 1883, $578; December 29th, 1883, $500. The money was not paid to the clerk by the assignee

until the time of making his final report, January 28th, 1884. He neglected to pay over the money on the advice of his attorney, to whom the greater part of the trust fund was loaned.

The assignee should be charged with interest during the period he unreasonably withheld the money. It was his duty to have had a dividend declared as soon as the probable amount of the claims could be ascertained. As he received in bulk the greater part of the money of the estate at one time, he was bound to exercise diligence to secure a statement of the amount of the claims, present it to the court, and ask an order declaring a dividend. A trustee has no right to keep money from the beneficiaries when by reasonable diligence he can secure an order for their benefit. In this instance, the assignee having received the greater part of the funds of the estate at one time, the court should have charged him with interest after the lapse of such time as would have enabled him by the exercise of diligence to have secured an order declaring a dividend. Bishop Insolvent Debtors (2d ed.), 365. He had no right to withhold all the money until his final report was filed, for dividends may be declared when the amount can be ascertained although without absolute accuracy, as the court may approximate the exact amount. Doubtless an assignee may show an excuse, where one exists, for failing to secure an order declaring a dividend, but no such excuse is here shown; on the contrary, it clearly appears that the delay was without any legal excuse whatever.

Judgment reversed, with instructions to grant a rehearing upon the exceptions, and to proceed in accordance with this opinion.

MITCHELL, J., did not take part in the decision of this case.

Filed May 14, 1889; petition for a rehearing overruled Sept. 18, 1889.