ELLEN KELLY, administratrix, *vs.* HORATIO N. ALLIN & another.

Suffolk.   December 5, 6, 1911. — June 19, 1912.

Present: RUGG, C, J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction,* For an accounting. *Attorney at Law. Evidence,* Presumptions and burden of proof, Opinion: experts. *Equity Pleading and Practice,* Exceptions to master's rulings on evidence.

In a suit in equity by a woman against an attorney at law for an accounting, it appeared that the defendant acting as attorney for the plaintiff had brought an action for her against a third person for a sum of money amounting to $6,000 which she believed to be due to her, and that the defendant without the knowl-

edge or consent of the plaintiff caused a judgment for such third person to be entered in such action, in return for which the defendant received personally from such third person an option to purchase certain real estate for a certain price which was $6,000 less than its market value and afterwards received a conveyance of the real estate for which he paid the price agreed, and that the defendant fraudulently concealed these acts from the plaintiff. *Held*, that the defendant had been guilty of a breach of trust and had committed a fraud upon the plaintiff, and that the plaintiff was entitled to an accounting for the profits realized by the defendant with interest from the date of the conveyance of the real estate to him; that it was immaterial whether the plaintiff had a good cause of action in the action which the defendant had caused to be disposed of for his own benefit; and that the plaintiff had the right to elect whether she would bring a suit to compel a conveyance to her of the property which the defendant had acquired by his breach of trust or the present suit to hold the defendant accountable for the gain which he had made.

In a suit in equity for an accounting, against an attorney at law who committed a breach of trust and a fraud upon the plaintiff by receiving personally certain property in return for the surrender of a claim of the plaintiff entrusted to him for collection and the surrender of another claim in which the plaintiff had no interest, if the defendant wishes to show that a part of the consideration for his receipt of the property was the surrender of such other claim, the burden is upon him to show what that part was, and in the absence of evidence upon the subject it will be assumed that the whole of the consideration for the property was the surrender of the claim of the plaintiff.

In a suit in equity, in which a material question was the market value of a block of apartment houses in Brookline which had been purchased by the defendant, who was an attorney as law, the defendant at a hearing before a master offered himself as an expert on the question of the market value of the property. It appeared that the defendant besides buying the property in question had bought one other piece of real estate in another part of Brookline, but that he never had acted as an agent in handling real estate or had to do with the buying or selling of store property in Brookline or of vacant land in the vicinity in question or of other apartment house property. The master found that he was not qualified to testify as an expert and excluded the evidence. *Held*, that the question whether the defendant was qualified to testify as an expert was a matter to be determined by the master.

An exception in a suit in equity to the admission by a master of evidence for the purpose of contradicting the testimony of the excepting party, where the evidence admitted tended only to contradict his testimony upon an immaterial matter and did not prejudice him, should be overruled.

MORTON, J. This is a bill in equity to compel an accounting by the defendant Allin, hereafter called the defendant, in respect to certain property alleged to have been received by him in consideration of the entry by him of judgment for the defendant without costs, without the plaintiff's knowledge or consent, in an action brought by him for her. The case was sent to a master. The defendant filed exceptions to his report and the plaintiff moved for

the confirmation of it. Thereupon the case was reserved * for the full court on the "master's report, exceptions thereto and all questions of law therein."

According to the master's report the case presents a gross violation by the defendant of the trust and confidence reposed in him by the plaintiff and of his duty to her as an attorney at law. The plaintiff's husband was in the employ of one Thomas White, father of Charles F. and William H. White, for about twenty years, but left such employ in 1877, on his marriage to the plaintiff. He died in 1904. After his death the plaintiff sought the services of several lawyers in turn to collect a large sum of money which she claimed that her husband had intrusted to Charles F. White for investment. Finally she was brought to the defendant in July or August, 1906, and after some investigation he told her that he would act for her as her attorney and had her appointed administratrix of her husband's estate and brought an action at law against Charles F. White and Salome E. White in which William H. White was summoned as trustee. The action was duly entered in the Superior Court and a declaration was filed alleging that Kelly had placed in the hands of the defendants from time to time for investment large sums of money which amounted with interest to $6,000. William H. White appeared for himself as trustee, and also appeared as attorney for the defendants. Pending this action William H. White and his co-executor foreclosed a mortgage of $62,000 on certain real estate in Brookline. Pursuant to a previous arrangement between the defendant and White the defendant bid at the sale, but the property was struck off to White. Thereupon the defendant and one Burr, the mortgagor, brought an action against White and his co-executor for breach by them of an oral agreement relating to the sale and to subsequent loans in reference to the real estate. While these two suits were pending, the defendant called on William H. White, and as the result of interviews and negotiations between them an agreement under seal was entered into between the defendant and White, providing that in consideration of the entry of judgment for the defendants without costs in the action brought in the name of the plaintiff, and also in that brought by the defendant and Burr, White would procure

---

* By *Richardson*, J. The master was Clarence H. Cooper, Esquire.

an extension of the mortgage for $62,000 and convey the equity to Allin subject to the said mortgage and all existing liens and incumbrances on or before April 1, 1909. This agreement was dated January 2, 1909. On January 11, 1909, a paper signed by the defendant as attorney for the plaintiff and by White as attorney for the defendants was filed in the action brought by the plaintiff against Charles F. White and Salome E. White, agreeing "that in the above entitled action judgment may be entered for the defendants without costs." This entry was without the knowlledge, consent or authority of the plaintiff. A similar paper was filed at the same time in the action brought by the defendant and Burr. In May, 1909, about four months later, the property was conveyed to the defendant, who paid $12,000 in cash. The master found that the property was assessed at $88,000 but that the market value was $80,000. The plaintiff contended that the defendant was accountable to her for what he had made out of the transaction. The master found, if the plaintiff's contention was correct, that she was entitled to recover the sum of $6,420, made up by taking the market value of the property and adding to it the net income which the defendant had received and deducting from it the amount of the mortgage and the $12,000 paid by the defendant and interest on that amount. The plaintiff who was well advanced in years and feeble, but, as the master found, fairly intelligent, had many interviews with the defendant in the presence of a friend, in which she was repeatedly assured by the defendant that her case would be tried soon and that he would have some money for her. Some of these assurances were given as late as October, 1909, nine months after the agreement for judgment for the defendants had been filed. Early in January, 1909, he told two friends who called on him at her request that he was engaged in a land deal and if it turned out as he expected he would have some money for her, and that she had a good case against Charles White and he had no doubt that he had had her husband's money. In January or February, 1910, the plaintiff with a friend called on the defendant and he told them that if he effected a certain land deal with the Whites he would be able to give the plaintiff some money. He repeated the same thing to them the following week, when the plaintiff's friend, who had learned that the plaintiff's case had been disposed of in Janu-

ary, 1909, told the defendant what he had been informed and the defendant became angry and ordered them out of the house. About the time when the instrument of January 2, 1909, was executed, White asked the defendant "how Mrs. Kelly came into this settlement," and he replied in substance, "I am going to look out for (or take care of) Mrs. Kelly; she ought to have something." White always contended that there was nothing in the plaintiff's claim, but the defendant would not admit that. He received no retainer and made no charge for his services or disbursements. The master finds specifically that the consideration named in the instrument of January 2, 1909, was the real consideration for the conveyance, and he sums up his conclusions as follows: "It thus appears from the preceding finding of facts, that the plaintiff placed a claim against a third person which she thought was valuable in the hands of the defendant as an attorney; that the defendant, acting as such attorney, brought suit for the collection of that claim and entered it in court; that, while the action was pending, the defendant made an agreement with the attorney for the defendants in that action to take an option for the purchase of certain property in consideration of the dismissal of that action with another; that this agreement was embodied in a written instrument under seal, executed by the defendant and the attorney above named, reciting the entry of judgment for the defendants without costs in the plaintiff's action and in another action as the consideration, which was the real consideration; that such an agreement for judgment in the plaintiff's action was signed by the defendant and filed in court without the plaintiff's knowledge, consent or authority; that thereupon the property named in the agreement was conveyed to the defendant; that the defendant stated to the attorney above named that he would take care of the plaintiff, and that she ought to have something; that, while said attorney maintained that there was nothing in the plaintiff's claim, the defendant would not admit it; that the defendant concealed from the plaintiff the dismissal of her action and made misleading statements to her for a year afterwards; and that, as the result of the defendant's acts, he has acquired, upon the payment of twelve thousand dollars ($12,000), the ownership of the equity in a valuable parcel of real estate."

It is plain, we think, that the plaintiff is entitled to relief. In

violation of the trust and confidence reposed in him by the plaintiff as her agent and attorney, and without her knowledge or consent and for his own benefit and gain, the defendant caused an entry of judgment for the defendants without costs to be made in the action which he had brought for her against White. He also fraudulently concealed from her what he had done. Fraud is a well recognized head of equity jurisprudence, especially when it grows out of fiduciary relations like those between attorney and client. The plaintiff's right to relief is not affected by the fact that she had a remedy at law, or possibly might have had the entry of judgment vacated and the action brought forward. It was for her to elect which remedy she would pursue. It is immaterial whether the plaintiff had a good cause of action against White or not. The defendant caused the action to be disposed of for his benefit, in the manner in which it was disposed of, and he must account for what he has received. If he relied upon the fact that a part of the consideration for the conveyance to him came from the entry of judgment in the Burr case, it was for him to show what that part was, which he has not done. He was in the position of an accountant upon whom the burden rests to make good any charges which he claims should be allowed. *Little* v. *Phipps*, 208 · Mass. 331. The entry of judgment furnished the consideration not only for the option which was given him, but for the conveyance when it was made. This appears from the agreement of January 2, and from the finding by the master, and is not affected by the fact that the option expired on April 1, 1909, or by the fact that the defendant contributed by his own funds and efforts to the result. *Dutton* v. *Willner*, 52 N. Y. 312. The case is not one where the plaintiff seeks to establish a resulting trust by reason of having furnished the consideration in whole or in part for the conveyance, but it is a case where the defendant has been guilty of a breach of trust and has committed a fraud upon the plaintiff and has thereby, as the plaintiff alleges, realized profits for which she seeks to hold him accountable. Nothing is better settled than that a trustee cannot use the property or estate in his hands for his own advantage or gain, or that if he does he will be accountable for any gain that he may have made from such use. The same rule applies to an agent or attorney. *York Buildings Co.* v. *Mackenzie*, 3 Paton, 378. *Dodd* v. *Wakeman*, 11 C. E. Green, 484. *Moinite* v.

*Days,* 1 Baxt. (Tenn.) 431. *Leake* v. *Sutherland,* 25 Ark. 219. *Gardner* v. *Ogden,* 22 N. Y. 327. *Dutton* v. *Willner,* 52 N. Y. 312. The relations of attorney and client are not in all respects the same as those of trustee and *cestui que trust,* but in regard to this matter there is no difference between them. It was for the plaintiff to elect whether to bring suit to compel a conveyance of the property which the defendant acquired as the result of his dealings with White, or to hold him accountable for the gain which he made, which was the difference between the market value of the property and the mortgage plus the $12,000 paid by him. *Jennison* v. *Hapgood,* 7 Pick. 1. *Jennison* v. *Hapgood,* 14 Pick. 345. *Greenfield Savings Bank* v. *Simons,* 133 Mass. 415. *Gardner* v. *Ogden,* 22 N. Y. 327. *Dutton* v. *Willner,* 52 N. Y. 312. Mechem on Agency, § 469. To compel her to take the property and pay to the defendant the $12,000 paid in cash by him and assume the mortgage would be practically to deny her relief. She has elected, as she had the right to do, to hold the defendant accountable for what he made out of the transaction instead of seeking to compel him to convey the property to her.

In stating the account the master has included the net income received by the defendant from the property and allowed him interest on the $12,000 paid by him. This would be correct if the plaintiff were seeking to compel a conveyance by the defendant to her, but is not correct where what she seeks to hold him accountable for is the profit which he made. That, as already observed, is measured by the difference between the market value on one side and the mortgage and what the defendant paid in cash on the other. The master has not specifically found what this difference was, but he has stated an account from which it can be determined, and it appears that the amount thus realized by the defendant was $6,000, and we think that the plaintiff is entitled to a decree in her favor for that amount with interest from the date of the conveyance to the defendant.

The defendant does not now rely upon the exceptions so far as they relate to matters upon which he contended that the master was warranted by the evidence in making and should have made certain findings, but did not. The other exceptions now relied on are disposed of by what we have said, with the exception of those relating to matters of evidence which we proceed to consider.

The defendant besides buying the property in question* had bought one other piece of real estate in another section of Brookline, but never had acted as an agent in handling real estate or had to do with the buying and selling of store property in Brookline or of vacant land in the vicinity in question or of other apartment house property. He offered himself as a witness on the question of the market value of the property in question. The master found that he was not qualified to testify as an expert and excluded the evidence. The fair conclusion from the report is, we think, that the defendant offered himself as a witness as an expert, not as the owner of the property. Whether he was qualified as an expert was a matter for the determination of the master. *Tucker* v. *Massachusetts Central Railroad,* 118 Mass. 546.

What we have previously said disposes of the contention based on one of the exceptions that the master erred in not finding and reporting that no evidence was offered from which he could find that the option had any pecuniary value.

The remaining exceptions relate to the admission of the transcripts from the ledgers of the New England Telephone and Telegraph Company. These were offered and admitted for the purpose of contradicting the defendant who had testified that he was on a vacation during July and August, 1908, and that his house was closed and the maid away, and that he could not have had interviews with one of the witnesses, as the witness testified. But the witness whom his testimony thus tended to contradict had not so far as appears from the record testified to any conversations with the defendant during July or August, 1908, or 1909. The mere fact that he had testified to calls on the defendant during the summer of 1908 or 1909, without anything more, was immaterial; and we therefore are unable to see how the defendant was prejudiced by the admission of the evidence. So far as there was any contradiction it related to an immaterial matter, and the exceptions to the admission of the transcripts must be therefore overruled.

The entry will be: Exceptions overruled and report confirmed, and decree to be entered in favor of the plaintiff for $6,000, with

* The property in question consisted of a block of six apartment houses, each containing three suites, at the corner of Aspinwall Avenue and Brookline Avenue in Brookline.

interest from the date of the conveyance to the defendant to the date of the entry of the decree with costs.

*So ordered.*

*H. S. MacPherson,* (*S. Bishop* with him,) for the plaintiff.

*G. L. Mayberry,* (*J. Burke* with him,) for the defendant Allin.