JACOB MANHEIM *vs.* WILLIAM S. WOODS & others.

Bristol.  October 28, 1912. — February 3, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DE COURCY, JJ.

*Attorney at Law. Evidence,* Presumptions and burden of proof. *Equity Pleading and Practice,* Appeal.

On an appeal by the plaintiff from a decree dismissing with costs a bill in equity against an attorney at law seeking that an absolute assignment to the defendant of a policy of insurance upon the plaintiff's life be declared to have been an assignment for the purpose of securing a loan by the defendant to the plaintiff, and praying for an accounting and a redemption of the policy, the report of the evidence showed that the testimony at the hearing was voluminous and that the defendant was a witness. The judge found that the defendant had sus-

tained the burden of proving that the assignment of the policy not only was absolute, but that it had been fairly and honestly consummated. *Held*, that, when modified by the omission of costs, the decree dismissing the bill should be affirmed, because the record, while revealing circumstances which had a strong tendency to warrant different conclusions from those reached by the judge, did not show that his findings were plainly wrong.

BILL IN EQUITY, filed in the Superior Court on May 17, 1911, and afterwards amended by the filing of a substitute bill, against William S. Woods, Clinton F. Macomber, Harold F. Hathaway and the Mutual Life Insurance Company of New York.

The substitute bill alleged that the plaintiff's life was insured by the defendant insurance company for $10,000; that the plaintiff after the death of his wife employed the defendant Woods to contest her will, which practically excluded him from sharing in property which had stood in her name but had been accumulated by his efforts.

The second paragraph of the substitute bill contained among others the following allegations: That the plaintiff, acting under the advice of Woods, and while still weak and sick, consented to a settlement of his claims upon the property disposed of by his wife's will and left by her to another man to the exclusion of the plaintiff, under which settlement the plaintiff received about $9,000; but that before receiving that amount the plaintiff, under the advice of the defendant Woods, borrowed from the defendant corporation the sum of $2,300 upon the policy of insurance as security, and delivered the policy to the defendant company to hold as security for the loan; that the plaintiff was informed and alleged that under the terms of the policy he would be entitled to receive either $4,300 in cash, or a paid-up policy for $10,000 after payment of the loan, if he lived until September 27, 1914; that in May, 1909, the defendant Woods, although well knowing the value of the policy, concealed the same from the plaintiff, and falsely represented to the plaintiff that the policy was of much less than its real value; and knowing the plaintiff's financial condition the defendant Woods further falsely represented to the plaintiff that he would be unable to pay the annual premiums necessary to keep the policy in force, together with the interest on the loan of $2,300, and thereby on or about May 22, 1909, fraudulently induced the plaintiff to make an assignment of the policy to him; that the assignment was made for the purpose of securing the

defendant Woods for such sums as he might pay to the plaintiff, or on his account, either as interest on the loan, or for premiums due to the company, or for money to be advanced from time to time to the plaintiff; and it was distinctly stipulated and agreed that if the plaintiff at any time desired to have the assignment returned and cancelled by the defendant Woods, he should be entitled to such return and cancellation upon repaying to Woods the amount due to him on account of such advancements, with interest thereon; and that the plaintiff was informed and alleged that some paper was drawn up and signed by Woods with reference to the assignment, but that he had neither the original nor a copy of such paper, the same having been retained by Woods.

Paragraph three of the substitute bill was as follows: "The defendant Woods now pretends that the said assignment was absolute, and in order to prevent the plaintiff from having the same returned and cancelled, on October 26th, 1909, made a further assignment of the said policy to the defendants Hathaway and Macomber, said Hathaway being an attorney at law, having an office in Taunton, on the same floor with the defendant Woods, the said Macomber being an associate or client of the said Hathaway. The plaintiff is informed, believes, and therefore alleges that neither the said Hathaway nor the said Macomber paid anything, or gave any valuable consideration for the said assignment, and that both of them had notice of the terms upon which the assignment from the plaintiff to Woods was secured; and the plaintiff further says that he never gave his consent to the said assignment by Woods, and although the plaintiff is now informed that his name has been signed as evidence of such consent, such signature was not made by the plaintiff, and is a forgery."

The bill further alleged a tender by the plaintiff of an amount due from him to the defendant Woods, and the prayers of the bill were for an accounting, for injunctions restraining the defendants from conduct with the policy which would be in contravention of the plaintiff's alleged rights, and for general relief.

Before the trial of the case, the plaintiff died and Abraham Summerfield, the executor of his will, was admitted as plaintiff in his stead. Subsequently the beneficiary named in the insurance policy above described, Mattie Summerfield, was admitted to prosecute the case as plaintiff.

The case was heard by *Pierce,* J., a commissioner being appointed under Equity Rule 35 to take the evidence. The commissioner's report of the testimony occupied one hundred and forty-five pages of the printed record. The material portions of the evidence are described in the opinion. The judge filed the following memorandum of his findings:

"1. The defendant William S. Woods was retained as attorney by Jacob Manheim to contest the will of the wife of the said Manheim and acted as such attorney throughout the proceedings.

"2. The defendant Woods served his client with fidelity throughout the proceedings affecting the said will and carried through for him an advantageous settlement.

"3. The defendant Woods retained as advisory counsel Arthur M. Alger of Taunton and paid the said Alger out of his fee received in the adjustment of the said case.

"4. The settlement carried through by the said Woods was a just and fair one and the fees charged for professional services were reasonable and proper and were agreed to by Jacob Manheim and were satisfactory to him at the time.

"5. Jacob Manheim was greatly incensed by the provisions of his wife's will practically excluding him from participation in her estate and was bitterly resentful of its provisions.

"6. Shortly after the death of his wife Jacob Manheim procured a loan of some $2,300 upon the security of his life insurance policy in the defendant company, acting through the defendant Woods as his attorney and agent.

"7. Prior to the procurement of the above mentioned loan the facts in regard to the value of said policy were known to the said Manheim and especially that he could procure a larger sum by way of loan than he could by surrendering the policy and receiving its cash surrender value.

"8. Subsequent to the procurement of the said loan by Jacob Manheim upon his said policy, he tried to dispose of the same to a number of persons throughout Taunton, and was especially anxious to sell the policy to the defendant Woods, with whose family he was on familiar terms and whom he held in high esteem.

"9. Jacob Manheim sold his right, title and interest in said policy to the defendant Woods in May, 1909, being fully advised

in regard to the terms of the sale, as set forth in the papers, and agreeing thereto.

"10. There was no concealment of any material fact from the said Jacob Manheim by the defendant Woods in connection with the sale of said policy, nor any false representations in regard to the value of the policy or in regard to the plaintiff's ability to pay annual premiums thereon, necessary to keep the policy in force, as set forth in paragraph 2 of the plaintiff's bill, nor did the defendant Woods fraudulently induce the said Manheim to make any assignment of said policy.

"11. The assignment of said policy to the defendant Woods was not for the purpose of securing him for such sums as he might pay Jacob Manheim or on his account, and it was not stipulated and agreed at any time that Manheim might re-take the policy and cancel the assignment upon paying the defendant Woods his advances, with interest.

"12. There was no collateral paper signed by William S. Woods in reference to the assignment of the policy from Jacob Manheim to him, but the assignment, together with the agreement of William S. Woods to pay the plaintiff as set forth in the agreement of said Woods under date of May 22, 1909, represents the whole transaction.

"13. After the papers assigning the policy to William S. Woods were executed, the defendant Woods either paid or caused to be paid to the company and to Jacob Manheim all sums of money which were to be paid to the company or to Manheim under the terms of the agreement of May 22, 1909, up to the time of the death of the said Manheim, and in all other respects carried out his obligation thereunder.

"14. The assignment of the said policy by Woods to Hathaway and Macomber, in October, 1909, was made in the ordinary course of business, in good faith, for $500, paid by Hathaway and Macomber without notice of any claim or demands, legal or equitable, by Jacob Manheim or anybody representing him.

"15. Due notice of the assignment to Woods and the subsequent assignment to Hathaway and Macomber was given to the defendant company and received by it."

A decree was made dismissing the bill with costs. The plaintiff appealed.

*W. D. Turner, (J. S. Spencer* with him,) for the plaintiff.

*H. F. Hathaway*, for the defendant Woods.

*H. W. Ogden*, for the defendants Macomber and Hathaway.

BRALEY, J.  The original plaintiff, Jacob Manheim, after bringing suit, died testate, and it was prosecuted by his executor until the beneficiary who claims the proceeds of the policy was substituted as plaintiff.  It will be necessary to a clear understanding of the controversy to refer to the parties as they stood at the filing of the bill, for the right to relief depends upon the validity of the transfer by Manheim to the defendant Woods.

The plaintiff having been dissatisfied with the provisions of his wife's will, which had been offered for probate, employed the defendant, an attorney at law, as his legal adviser to protect his interests in the estate, though the evidence seems to warrant the inference that he did not desire an actual contest.  By negotiations with the principal legatee the defendant effected a compromise whereby upon receiving a substantial amount of money the plaintiff released all rights in the estate and withdrew his opposition.  During the proceedings for a settlement covering practically four months the plaintiff appears to have needed pecuniary assistance, and consulted the defendant.  The defendant testified that he appeared to have the full confidence of the plaintiff, and the fiduciary relation of attorney and client plainly existed, which upon the defendant's own evidence did not terminate until some time after the transaction in question.  This relation of trust and confidence requires a court of equity to scrutinize with the greatest care business dealings between them.  The transfer of property from a client to his attorney is not to be viewed as a mere commercial transaction where ordinarily each must beware of the trading ability of the other, and the advantage would remain with the more skilful bargainer.  As was said in *Manning* v. *Hayden*, 5 Sawyer, 360, 381, "this rule is alike necessary to preserve the dignity and integrity of the legal profession, and to protect the interests of a dependent and confiding clientage; and in the enforcement of it courts will not hesitate, because the injury to the client does not fully appear, or a positive intention on the part of the attorney to gain an advantage is not shown."  In the application of the rule the burden rested on the defendant of proving that the assignment of the policy to him not only was absolute, but had been

fairly and honestly consummated. *Hill* v. *Hall,* 191 Mass. 253. *Kelly* v. *Allin,* 212 Mass. 327. *Dunn* v. *Record,* 63 Maine, 17. *Dunn* v. *Dunn,* 15 Stew. 431. *Nesbit* v. *Lockman,* 34 N. Y. 167, 171, 172. *Manhattan Cloak & Suit Co.* v. *Dodge,* 120 Ind. 1, 3. *Newcomb* v. *Brooks,* 16 W. Va. 32. *Willin* v. *Burdette,* 172 Ill. 117. *Rogers* v. *R. E. Lee Mining Co.* 9 Fed. Rep. 721, 724, note. *Carter* v. *Palmer,* 8 Cl. & F. 657, 706. *Wright* v. *Proud,* 13 Ves. 136. Story Eq. Jur. (13th ed.) § 310.

By its terms the policy on the plaintiff's life for $10,000 was payable to his wife if she survived, but if she predeceased him, his executors or administrators, or whomsoever he might designate as beneficiaries, were to receive the insurance. Acting at his request the defendant obtained from the company on April 13, 1909, a loan for the plaintiff on the policy of $2,343, being less than the "cash surrender value" at that date. The defendant knew if the policy remained in force it would mature five years later when if surrendered its value in money would be approximately $8,159.70, and moreover he knew that upon the decease of the insured the full insurance could be collected. The plaintiff assigned the policy to the defendant on May 22, 1909, and, the company having accepted the assignment, the defendant had acquired the right to this amount at least, if he continued the payment of the annual premium of $440, the yearly interest of $116 on the loan, and paid the loan at maturity of the policy. The premium and interest were payable semiannually in advance, and the loan could have been discharged when the premium became due. But if the evidence leaves no uncertainty as to the defendant's knowledge of the plaintiff's needs, the value of the policy, and the profit reasonably to be anticipated, it also shows that the plaintiff had endeavored unsuccessfully to dispose of the policy before soliciting his attorney to purchase. The entire consideration as recited in the assignment included an agreement to pay to the plaintiff an annuity for life of $300 in equal monthly payments, and the likelihood of the plaintiff's death within less than twenty-five months does not seem to have been within the contemplation of the parties. From his declarations put in evidence under R. L. c. 175, §. 66, and subsequent correspondence, the plaintiff intended the transfer to be conditional, and upon repayment of all advancements with interest the assignment was to be cancelled, and the

policy returned. It is stated in the bill, and the declarant's evidence tends to support the averments, that the agreement to pay the annuity was to be reduced to writing in an independent instrument, and duly executed. The defendant while not denying the oral promise testified that nothing further was done. If the transaction had been between strangers it is hardly conceivable, that he would have advised his client to rely on the assignment, which by the terms of the policy must be transmitted to and retained by the company, as satisfactory evidence of a contract for the payment of an annuity which might run for years and extend beyond the life of the promisor. *Cahill* v. *Maryland Life Ins. Co.* 90 Md. 333. Compare *Berry* v. *Doremus*, 1 Vroom, 399. The consideration shows such inadequacy as to make the contract decidedly disadvantageous to the plaintiff if he could have carried the policy and had not been in want of ready money. He was, however, of mature age and of much business experience. The inference would not be unwarranted that he was afforded ample opportunity to consider the contract and did not act hastily.

It also appears from the testimony of witnesses apparently disinterested, that soon after it had been completed he expressed himself as being satisfied with the terms of the transaction.

Although falling short of the definiteness which would have made his narrative of what he claimed had occurred more consistent and satisfactory, yet if the defendant, who was a witness in his own behalf, is believed, the parties dealt on an equal footing. No material facts were suppressed, or misleading representations were made. Where fraudulent conduct is charged the appearance of the party implicated and his manner of giving evidence are of great importance in passing upon his credibility. The defendant's hesitation in the recollection of details, and his lack of certainty, where certainty even if not imperative was most desirable, may have been attributable to an honest failure of memory rather than to an intention to withhold information which might have discredited him and imperilled his professional standing. The judge of the trial court who saw and heard him accepted his evidence as convincing, or he could not have made the ninth, tenth and eleventh findings found in the memorandum of decision.

A careful examination of the record, while revealing circumstances which have a very strong tendency to warrant a different

result, does not show that the findings were plainly wrong, and accordingly they must stand. *Revere Water Co.* v. *Winthrop*, 192 Mass. 455, 459.

The assignment having been absolute and not conditional the subsequent sale and transfer of the policy by Woods to the defendants Hathaway and Macomber need not be considered. If the assignor is exonerated, their title is not open to inquiry. *King* v. *Cram*, 185 Mass. 103, 104. *Stewart* v. *Joyce*, 201 Mass. 301. But the decree dismissing the bill must be modified by the omission of costs, and when so modified it is affirmed.

*Ordered accordingly.*