WINFIELD S. CAHILL, Administrator d. b. n. c. t. a. of CATHERINE CAHILL, *vs.* THE MARYLAND LIFE INSURANCE COMPANY OF BALTIMORE CITY.

*Grant of Annuity Need Not be Under Seal—Informal Contract of Corporation.*

An annuity issued by an insurance company is a *chose in action*, and need not be executed under the seal of the company unless expressly required by its charter, or by statute.

Defendant company issued a policy promising to pay an annual sum to a woman during her life in consideration of a certain amount paid to it.   The annuitant died a year afterwards and her administrator brought an action to recover the amount paid for the annuity, alleging that the contract was invalid because not under seal.   Defend-

ant's charter authorized it to grant, purchase or dispose of annuities. *Held*, that defendant's charter did not require the agreement promising to pay the annuity to be under its corporate seal, and that even if such were the case, defendant would not have been allowed to repudiate the agreement, but would have been compelled to execute a grant in binding form, and consequently plaintiff is not entitled to recover the money, as having been paid upon a consideration that failed.

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*J. J. Alexander*, for the appellant.

1. An annuity by the law of Maryland is an incorporeal hereditament and may be granted in fee or fee-simple conditional, for life, or for years.  *Co. Litt.*, 144 b, 20 a, 2 a, quoted in 1 *Wait's Actions and Defences*, title Annuity— and *Turrentine* v. *Perkins*, 46 Ala. 631; 2 *Black Comm.* (Chitty ed.) 40 and notes, which authority is confirmed by *Hays* v. *Richardson*, 1 G. & J. 378 ; *Burton on Real Property*, 21 Law Lib. 82 ; *Crabb on Real Property*, 54 Law Lib., secs. 259–261; *Roscoe on Real Property*, 27 Law Lib. 35, 68, 466 ; 2 *Broom's Comm.*, by B. and Hadley, 55 ; 3 *Kent's Comm.* 461; 1 *Schouler, Pers. Property*, 542 ; 1 *Wait's Actions and Defences*, title Annuity; *Townsend* v. *Duncan*, 2 Bland Chanc. 53, 55 ; *Williams' Case*, 3 Bland Chanc, 251; *Robinson* v. *Townsend*, 3 G. &. J. 413 ; *Peyton* v. *Ayres*, 2 Md. Ch. Dec. 64.

2. An annuity *must* be *granted* by deed and cannot be granted otherwise.  The charter of appellee does not give power to grant annuities otherwise.  *Veghte* v. *Rariton Water Co.*, 19 N. J. Eq. 142 ; *Balto. & H. Co.* v. *Algire*, 63 Md. 320.  The word " grant " is everywhere used and necessary to charge the grantor.  See *Rolle's Abr.*, page 226, and *Co. Litt.*, 144*b*, cited by Rolle, that a writ of annuity will not lie on a rent created by way of reservation.  So if a man make a feoffment in fee, reserving a rent, no annuity

lies, because the words of reservation arc the words of the feoffor and not the *grant of the feoffee.* So *Bacon*, Abr. Grant E. to be made irrevocable a grant must be by dccd. 2 *Chitty's Blackst. Comm.*, 40 and notes ; 3 *Kent Comm.* 460 ; 1 *Wait's Actions and Defences*, title Annuity ; 3 *Washr. Real Prop.*, (Marg.) 605 ; 2 *Broom's Comm.*, by Broom and Hadley, 55 ; *Union Bank* v. *Ridgely*, 1 H. & G. 324 ; *Rayner* v. *Nugent*, 60 Md. 519 ; *Nield's case*, 14 Ves. Jr. 491; *In re Locke*, 2 Dowl. & Ry. 603 ; 1 *Saunders' Pleading and Evidence*, 84 hoc. tit.; 1 *Chitty Plead.* (16th ed.) 124.

So that no action can be maintained at law for arrears of an annuity, unless it has been granted by deed. It is proved in the record that the appellee assumed the preparation of the document, and it ought to be held that it was bound to give an entirely complete document on which suit could be brought most favorably to plaintiff. 1 *Wait's Actions and Defences*, title Annuity.

Annuity bonds or covenants are subject to the provision of *Stat. 8 and 9, W. III.*, ch. 11, sec. 8, and if judgment is obtained under the statute, execution may be sued out for the annual payments as they become due. *Walcot* v. *Goulding*, 8 T. R. 126 ; *Wood* v. *Wood*, 3 Wend. 454.

(*a.*) But on this document Mrs. Cahill, if she had to sue, could only bring a bill for specific performance of the agreement or an action of *assumpsit.* She, however, would not be bound to sue for a specific performance, as nobody having an option between a suit at law and in equity is bound to go into equity. The difficulties as to *assumpsit* would be insuperable. No such thing is known to the law as an annunity granted by parol. In such an action of *assumpsit* the plaintiff would have to take damages for the entire value of the annuity to be assessed by a jury (who would not have, perhaps, the materials to do justice), for the remedy at law would be to recover damages for all the breaches that might occur during her life, which would be to alter the entire contract between the parties, compelling the plaintiff to accept

the sum ascertained by the jury, which would be unreasonable as her agreement was for periodical payments of certain sums for an uncertain time. See *Schell* v. *Plumb*, 55 N. Y. 592.

(*b.*) Again, on a parol agreement, limitations would bar after three years, but the law is that arrears of an annuity are presumed paid only after twenty years from the death of the annuitant. *Small* v. *Lord Hamilton*, 2 Atk. 71; 1 *Wait's Actions and Defences*, title Annuity. (*c.*) But if she could not sue at law the contract was void. *Bostock* v. *Jardine*, 3 H. & C. 700.

In the next place Mrs. Cahill never contracted for such an annuity, as she could not sue for arrears of at law, and the appellee never intended to give her an annuity by deed, and was not authorized by law to give what it did give, and so there was no contract between the parties.

But Mrs. Cahill was a married woman at the time, and till her death, as the officers of the defendant knew, and certainly never acquiesced in accepting a void annuity, for acquiescense must have been with full knowledge of her rights. *Trader* v. *Lowe*, 45 Md. 1; *Hoffman Co.* v. *Cumberland C. & I. Co.*, 16 Md. 509; *Taliaferro* v. *First Nat. Bk. of Balto.*, 70 Md. 214; *Cockerell* v. *Cholmley*, 1 Russ. & M. 425, affd. in 1 C. & F. 60; *Lamotte* v. *Bowly*, 6 H. & J. 521.

Then if this instrument was and is void as an annuity, the consideration has failed, and we may recover it back in this action. *Hall* v. *Mayor of Swansea*, 5 Q. B. 526, 545. A corporation had wrongfully received moneys and it was held their wrongful act was ground for an action for money had and received, as it was absurd to suppose they would contract to return it. *Wilkinson* v. *Lloyd*, 7 Q. B. 27; *Young* v. *Cole*, 3 N. C. 724; *Scurfield* v. *Garland*, 6 East. 241; *Waters* v. *Mansell*, 3 Taunt. 56.

Nor can any estoppel arise, for it was held in *Fulton* v. *Metropolitan Ins. Co.*, 23 N. Y. Supp. Rep. 598, that where a policy of insurance is void, neither party can waive the error without the consent of the other. But the company

contends still the document is valid.    But in *Crane* v. *Nat. Fire Ins. Co.*, 16 Md. 260, it was held that where the preparation of an instrument is undertaken by a party he is dealt with more strictly, relying on *ex parte Wright*, 19 Ves. 257, where it was held that a grantor becoming bankrupt must be considered as undertaking to make an effectual grant, and had put it out of his power to do so, and so the other party was held entitled to prove against his estate for the purchase money, less payments made.

Here, however, no question can arise of this sort.    The appellee is a corporation, and money paid to it as a consideration for an act *ultra vires* it undertakes to execute may be thus recovered back.    *Maryland Hospital* v. *Foreman*, 29 Md. 531 ; *Tracey* v. *Talmage*, 14 N. Y. (4 Kern.) 167 ; *Curtis* v. *Leavitt*, 19 N. Y. 283.    Both cases cited and relied on in 29 Md. 531.

*William A. Fisher* and *Clayton C. Hall*, for the appellee.

1. There was no money paid by and no consideration moved from the appellant's testatrix to the appellee.

The annuity policy issued by the appellee was a contract on the part of said corporation made with John Cahill to pay Kate Cahill the sum of $1,040 per annum, in equal quarterly instalments of $260 each, during the term of her natural life.    There was no privity of contract between said corporation and Kate Cahill ; the money paid for the purchase of the annuity did not belong to her and was not paid by her.    She, therefore, could have no right of action based on failure of consideration, if there had been such failure. *Boyce* v. *Wilson*, 32 Md. 129 ; *Small* v. *Schaefer*, 24 Md. 158 ; 1 *Chitty on Pleading*, 365 ; *Thurston* v. *Mills*, 16 East. 274, *per* Lord Ellenborough ; *Owings* v. *Owings*, 1 H. & G. 488–491 ; *Natl. Bank* v. *Grand Lodge*, 98 U. S. 123 ; *Exch. Bank* v. *Rice*, 107 Mass. 37 ; *Marston* v. *Bigelow*, 150 Mass. 45 ; *Borden* v. *Boardman*, 157 Mass. 410 ; *Linneman* v. *Moross*, 98 Mich. 178 ; *Tweddle* v. *Atkinson*, 1 B. & S. 393–397 ; *Price* v. *Easton*, 4 B. & A. 433.

2. The instrument executed by the appellee was a valid contract of annuity. Distinction must be made between different forms of annuity, and of annuity contracts. In the *Encyclopedia Britannica* article upon Annuities (written by Thomas B. Sprague, a distinguished English actuary) they are defined as follows : " If an annuity is payable for a term of years independent of any contigency, it is called an annuity certain ; if it is to continue forever, it is called a perpetuity ; and if in the latter case it is not to commence until after a term of years, it is called a deferred perpetuity. An annuity depending on the continuance of an assigned life or lives is sometimes called a life-annuity ; but more commonly the simple term ' annuity ' is understood to mean a life annuity unless the contrary is stated."

It is manifest that any corporation which had authority to make obligations for the payment of money could issue such obligations for an annuity certain, as above defined, whether such obligation were expressed in a series of notes payable one, two, three years after date, or in one instrument promising yearly payments during a specified number of years. And such an obligation would be valid without seal. The peculiarity of annuities, such as life insurance companies are authorized to grant, consists solely in the fact that their duration is contingent upon the duration of human life—that of the *cestui que vie.* Anciently, annuities were frequently granted by individuals in consideration of borrowed money, the annuities being payable during the lifetime of the borrower, who was in this case the grantor —he was the *cestui que vie.* The annuity was then commonly made payable to the grantee and his *heirs* (in case the grantor should survive the grantee), and hence came to be regarded as an incorporeal hereditament, in that the benefits passed to the heir and not to the legal representatives or administrator of the grantee.

Before the rise of corporations formed for the insurance of lives and granting of annuities, that was the usual form of annuity. It was clearly the only form in the mind of

the commentator (Lord Coke) when he used these words :
" *A writ of annuity* is a writ for the recovery of an annuity.
An annuity is a yearly payment of a certain sum of money,
granted to another in fee, for life, or years, charging the
person of the grantor only.   But not only the grantee, but
his heir, and his and their grantee also, shall have a writ of
annuity.   But if a rent-charge be granted to a man and his
heirs, he shall not have a writ of annuity against the heir
of the grantor, albeit he hath assets, unless the grant be
for him and his heirs." *Coke on Littleton*, Book II, 449,
sec 144*b*.   The reference here is clearly to an annuity pay-
able during the life of the grantor, and to the ancient form
of action for recovery by writ of annuity now long obsolete.

Annuities, like rents, may be secured by land, and in
fact it is not uncommon for the rent reserved in a lease to
be described as the " clear yearly sum or annuity," etc.
What are termed ground-rents in this country are fre-
quently designated as annuities in England ; and in such
case can be conveyed only in accordance with the pro-
visions of law regulating the conveyance of interests in
land, though if the annuity be not directly charged upon
land, it becomes a personal security only.

*Blackstone*, Book 2, page 40, defines an annuity as fol-
lows :   " An annuity is a thing very distinct from a rent-
charge, with which it is frequently confounded, a rent-
charge being a burden imposed upon and issuing out of
lands, whereas an annuity is a yearly sum chargeable only
on the person of the grantor. "   An annuity in order to be
an hereditament must be granted to the annuitant and his
heirs.   The nature of an hereditament is well defined in
*Coke upon Littleton*, Book II, page 219, sec. 6*a* :   " But
*hæreditamentum*, hereditament, is the largest word of all in
that kind, for whatever may be inherited is an heredita-
ment, be it corporeal, incorporeal, real or personal or
mixed."

There is absolutely nothing in a contract of life annuity,
such as is granted by life insurance companies, terminable

upon the death of the annuitant, which could be inherited. Any money due upon it, at the death of the annuitant, could only be on account of unpaid instalments which had become payable during the lifetime of the annuitant, and which would go to the administrator and not to the heir.

Kent, in his *Commentaries*, clearly recognizes this distinction, for after quoting the language of Lord Coke, above cited, he adds, (vol. III, page 660): " *If* the annuity be agreed to be paid to the annuitant *and his heirs*, it is a personal fee, and transmissible by descent like an estate in fee, and forfeitable for treason as an hereditament, and *for that reason* belongs to the class of incorporeal hereditaments."

Annuities, such as were granted by individuals, payable during the lifetime of the grantor, to the grantee and his heirs, were clearly what were in the mind of the commentator, *Blackstone*, Book 2, page 461, when he speaks of the practice of purchasing annuities upon lives, mentioning them merely for the purpose of showing that when issued for borrowed money they were not in contravention of the statute against usury, for the reason that the yearly payments included interest and principal both, and that their duration was uncertain as depending upon the life of the borrower.

3. A grant of annuity need not be by deed under seal. Appellee's charter, *Act of 1864*, ch. 362, sec. 11 enacted " that the said board of directors * * * shall have power to enact ' by-laws, rules and regulations ' for the government of its officers, agents and servants, and the management of its affairs not inconsistent with this act or the Constitution and laws of this State." Under the authority so conferred, the said board did adopt a by-law, in the following words : " ARTICLE V. *Officers.* The officers of the company shall consist of a president, secretary and actuary, who shall hold their office until their successors are elected, and in whose special charge shall be the books, papers and effects generally, of the company. The

signature of the president, with that of the secretary or actuary, being required to make valid any obligation binding on this company."

The annuity policy granted by the company upon the life of Mrs. Kate Cahill, was signed by the president and secretary of the company in accordance with the by-law above quoted, and was therefore a valid obligation binding upon the company.

The president and secretary were the agents of the company appointed by its corporate act, and acting within the scope of their authority in making such contract binding on the corporation. (7 *Cranch* 306.) In the case of *Cox* v. *Maxwell*, 151 Mass. 336, a promise expressed in a letter was held to be a valid promise to pay an annuity, binding upon the estate of the promisor after his decease.

4. The word " grant " does not necessarily import grant by deed. If an annuity be secured by land, its grant or conveyance will be regulated by the statutes prescribing the mode of conveying an interest in land. But it has been shown that a life annuity granted by a life insurance company for the life of the annuitant, is merely a *chose in action* for the payment of money. The word " Grant " in connection with this subject, employed in the Act chartering the defendant, must be taken in its accepted, popular and commercial meaning. And for this meaning reference may be made to the definitions in standard dictionaries, of which the Court will take judicial notice.

5. Annuities granted by corporations are to be distinguished from those for which a deed is required. The Maryland decisions relating to annuities, have nothing in common with and no bearing upon annuities such as are granted by life insurance companies for the payment of money during the lifetime of the annuitant. They all relate to totally different classes of annuities, charged upon lands, or created by will and payable from the income from lands, or annuities created and assigned in lieu of dower right and secured by land. *Townsend* v. *Duncan*, 2 Bland.

45 ; *Jones* v. *Stockett*, 2 Bland. 409 ; *Robinson* v. *Townsend*, 3 G. & J. 413 ; *Peyton* v. *Ayres*, 2 Md. Ch. 64 ; *Est. Jane Blake*, 4 Md. Ch. 64 ; *Mitchell* v. *Mitchell*, 21 Md. 244 ; *Perkins* v. *Emory*, 55 Md. 27. In not one of these cases is the question even remotely involved as to the manner in which a grant of annuity by a body corporate should be evidenced.

The same is true of decisions by the English Courts, which were specially relied upon by the appellant in the trial of this cause in the Court below. In the case of *Neild* v. *Smith*, decided in the High Court of Chancery in 1808, (14 Vesey, 491,) there was an agreement for the grant of an annuity by one Norris upon the life of one Scott. Norris having died before the agreement was carried into effect by the actual grant of the annuity, while it was held by the Court that there had been no grant, judgment was given against the executors of the deceased, to carry out the agreement which he had made as a valid obligation binding upon his estate. And in the case *In re Saml. Locke, bankrupt*, decided in the Court of King's Bench in 1823 (2 Dowling & Ryland, 603,) the Rev. Saml. Locke had agreed in consideration of the advance of a certain sum of money, to grant an annuity of £66 12s, (amounting to over eleven per cent of the money advanced,) to continue during his own life, that of his nephew R. L., that of W. Langslow ( by whom the money, £600 was to be advanced,) of William Hayes (by whom the negotiations were conducted,) and the survivor of them. By the terms of this agreement, Locke promised that he would for the security of the annuity, convey certain copyhold premises, mortgage security and a policy of life insurance described in the agreement, " *when thereunto required by the said W. L., his executors, administrators or assigns.*" Before the execution of the conveyances promised, Locke was duly declared a bankrupt, and an action was brought for arrears of annuity. The Court held that none could be recovered, for no grant of annuity had been actually made,

the agreement being altogether prospective. This decision was rendered with reference to the provisions of the *Statute* 53 *George III.,* chapter 141, prescribing the mode of executing and attesting annuities, and requiring them to be enrolled in chancery. The language of the decision is as follows : " A grant of annuity must be by deed, and no action at law can be maintained upon any other instrument for the arrears of an annuity. It is quite clear, that the instrument now before the Court is not a deed ; for the recital evidently refers to some other and prior agreement, and the instrument itself approves itself by its language a mere agreement. In order to constitute an annuity deed there must be positive words of grant *immediately and presently* ; the word grant must be used ; that was decided in the case of *Neild* v. *Smith,* and it is now settled law. No such word is used in this instrument ; *it is altogether prospective,* and *therefore* no action at law can be maintained upon it for arrears."

It is clear from the reasoning of the Court that the ground upon which a right of action at law for arrears of annuity was denied, was that the instrument before the Court was merely an agreement *to grant* an annuity when required so to do, and that no grant having actually been made, the annuity had not begun to run, and therefore no arrears had accrued.

It is to be observed, however, that both these decisions, *Neild* v. *Smith,* and *In re Locke, bankrupt,* were rendered strictly with reference to British Statutes subsisting at the dates of the respective decisions : The first with reference to 17 *Geo. III.,* ch. 26, and the second with reference to 53 *Geo. III.,* ch. 141, by which the former statute had been repealed and superseded. By this latter statute it was required that within thirty days after the execution of every *deed, bond, instrument or other assurance,* whereby an annuity or rent-charge shall be granted for one or more life or lives, etc., a memorial (with particulars thereof) shall be enrolled in chancery. A similar provision was contained in

the earlier Act. In neither of the cases above cited had this requirement been complied with. The wide distinction existing between annuities granted by natural persons, and those granted by bodies corporate, was moreover clearly recognized in both these statutes ; for in each it was expressly provided (section 8 of the earlier Act, and section 10 of the latter Act) that the provisions of the Act " shall not apply to annuities granted by any body corporate." *Ellis on Insurance*, 4 L. L., 197, 202.

The rule that a grant of annuity must be by deed, if it were true as to corporations at a time when it was held that a body corporate could act and speak only by its common seal ; and as to individuals at a time when formal contracts had priority as to liability over simple contracts ; is certainly not borne out by the language of the statute last quoted, in which reference is made to grant of annuity by deed, bond, instrument or other assurance, clearly indicating that there might be a valid grant of annuity by an instrument not under seal.

FOWLER, J., delivered the opinion of the Court.

This case was most fully and ably argued, but it does not appear to us that there is any serious difficulty presented. There is little if any contention in regard to the controlling facts. Of course if it be admitted, as contended on the part of the appellant, that the contract or policy by which the appellee bound itself to pay the annuity is *ultra vires* and therefore void, or that the instrument itself was not properly executed, or that an annuity cannot be created or granted by parol, but must be by deed, there might be some room for controversy ; but we not only do not admit any of these propositions, but we distinctly deny them all as applicable to this case.

What are the facts ? On the 20th of April, 1895, the Maryland Life Insurance Company of Baltimore, issued its policy of annuity to Mrs. Kate Cahill, agreeing thereby, in consideration of the sum of $14,116.96 paid by her hus-

band, John Cahill, to pay to her an annuity of $1,040 during the continuance of her life.   This sum was paid by the husband in accordance with an agreement set forth in a deed of separation executed by him and his wife, she agreeing on her part, in consideration of the purchase of the annuity by him, to renounce her right of dower and to do and perform certain other things not necessary now to mention. She lived but a short time to enjoy the annuity, for she died on the 20th of November, 1896, all the payments of the annuity having been promptly made during her life as provided by the policy.   The contract or policy by which the insurance company agreed to pay the annuity was signed by its president and secretary in accordance with its by-laws and was in the usual form in which such assurances were made by the company.   The administrator *d. b. n. c. t. a.*, of Mrs. Cahill brought an action of *assumpsit* against the insurance company on the common counts for money lent, money had and received and money found to be due on accounts stated, &c.   The theory upon which this suit was brought is that the policy is void because an annuity can be created or granted only by deed, and that the charter of the insurance company does not give power to grant annuities otherwise.   The contention is, therefore, that the policy in question being not under the seal of the company, and not its deed, but simply a written contract of the company signed by its president and secretary, no action at law could have been maintained for arrears of the annuity and consequently there was no valid contract between the parties.   There are some other questions which were argued at great length, but the view we entertain of this case renders it unnecessary to consider them.   The judgment of the Court below being for the defendant, the plaintiff has appealed.

It will be observed that, if we leave out of consideration the mere form of the policy, Mrs. Cahill got all that the defendant agreed to give her, *Penniman* v. *Winner* 54 Md. 135, for it is conceded that the annuity was promptly paid

during her life, and as was suggested at bar, if she had lived sixteen years to enjoy the annuity instead only of sixteen months, it is not likely this suit would have been brought. Without considering whether the representative of Mrs. Cahill or her husband is the proper party plaintiff, we will briefly consider the question whether an action of any kind by any person can be brought against the insurance company under the circumstances presented by this appeal. The answer to this question depends upon the relation of the parties to each other, and, as contended by the plaintiff, upon the validity of the contract by which the defendant agreed to pay the annuity. Assuming without deciding, as contended, that if the contract was invalid and void—that the plaintiff had a right to bring an action of *assumpsit* to recover the purchase money—which the Court below sitting as a jury found was paid by and was the money of the husband, the first question presented and indeed the only one is, whether that contract was or was not a binding and valid contract of the defendant. The answer to this question it seems to us is obvious. The defendant's charter (Act of 1864, ch. 362, sec. 3) authorizes it among other things "to grant, purchase or dispose of annuities." Now let us assume *ex gratia* that the proper construction of the language used in the charter is that the defendant may grant or dispose of an annuity only by deed, yet it can hardly be contended that the contract itself is *ultra vires*, and therefore void because the officers of the defendant executed it in an irregular or imperfect manner. The power to grant or dispose of annuities is a charter power, and the most, therefore, that can be said is that in this case the officers of the company have failed to attach the seal of the company or have omitted some other technical requirement. Under such circumstances the defendant, after receiving the purchase money would not be allowed to defend itself in a suit to recover the annuity on the ground, not that the contract is void because it is *ultra vires* but because, although the charter authorized it to make the contract, it had not been

executed in a proper and legal manner.   On the contrary a Court of Equity would have compelled it to execute the contract in a legal and binding form, and in the meantime the annuitant could have sued for the instalments because the law would have implied a promise to pay them, on which an action of *assumpsit* would lie.   And if the defendant would not be allowed to repudiate the contract, neither could the other party, for in order to be equitable the estoppel must be mutual.   It may be conceded as contended by appellant, without, however, so deciding, that if this were a contract *ultra vires*, which as we have seen it is not, neither party would be estopped.

Thus far we have assumed that while the charter authorizes the defendant to grant or dispose of annuities, the legal and proper construction of the grant requires the contract to be in the form of a deed.   But so far from this being the true construction we think it abundantly clear not only that the policy issued to the late Mrs. Cahill is, as testified by the president of the defendant, in the usual form in which such assurances were made by the defendants, but that both in form and substance it was in entire accordance with the charter.   Indeed we might almost take judicial notice of the fact that it is now usual and has been for many years the general custom of insurance companies to issue just such documents as the one issued to Mrs. Cahill, not under seal, but in the form of a written contract signed by officers designated by the by-laws.   We do not place our conclusion on judicial notice of this alleged general custom, nor on the evidence of it offered by the defendant, for the Court below excluded that evidence, and the propriety of that ruling is not before us.   But it is settled law in this State that a policy of life insurance is a mere *chose in action* for the payment of money.   *Rittler* v. *Smith* 70 Md. 265.   And so is a contract for a life annuity, unless it be a life annuity issuing out of or charged upon lands.   Of this latter class are most of the cases relied upon by the appellant.   What is an annuity like the one in this case but

348    CAHILL vs. M.D. LIFE INS. CO.

Opinion of the Court.                    [90

a contract on the part of the insurance company· in consideration of a sum certain to pay the annuitant specified sums annually during life? There is certainly no feature of inheritance about such a contract as this, and we can conceive of no reason why such a *chose in action* may not, as any other *chose in action*, be the subject of a parol or written contract, unless there be some statute requiring such a contract to be by deed. But so far from this being the case, as we have already said, we are of opinion that the charter of the defendant company, authorizes just such a contract as the one we are considering. By that charter the defendant may "grant, purchase or dispose of annuities." Whatever may be said of the word "grant," it certainly cannot be contended that any conclusion can be drawn from the use of the word "dispose," that the contract by which the annuity is disposed of must be by deed. But we cannot adopt the view of the appellant that the charter of the defendant does not confer power upon it to grant annuities otherwise than by deed. Undoubtedly it may "grant" annuities by deed, if it will, but it may also by the very terms of the charter "dispose" of them by contract in writing. That a *chose in action* like this annuity can be disposed of only by deed is a proposition which we think requires no argument to refute. It is sufficient to say that the mode of creating or transferring an annuity adopted in this case is authorized by the charter itself of the defendant. 2 *Am. & Eng. Ency.*, p. 388. We think it unnecessary to refer to the many authorities citied at bar, because most of them have application only to questions which were argued, but which, as we have said, we need not consider. Nor do the *English Statutes* 17 *Geo. III.* ch. 26 and 53 *Geo. III.* ch. 141 appear to have any controlling effect in this case, even if we assume that they are in force here, for each of them provides that the provision of the Act "shall not apply to annuities granted by any body corporate."

Our conclusion is that the contract of annuity being valid there is no right of action in the plaintiff or any other

person to recover the purchase money paid by Mr. Cahill
for the annuity.

*Judgment Affirmed.*

(Decided January 9th. 1900).

