WILLIAM E. CURTIS, executor, *vs.* NEW YORK LIFE INSURANCE
COMPANY.

Suffolk. November 21, 1913. — February 27, 1914.

Present: HAMMOND, LORING, SHELDON, & DE COURCY, JJ.

*Insurance*, Life, Endowment. *Contract*, Validity.

In 1905 an insurance company, organized under the laws of the State of New
York, in consideration of $3,946.25 paid to it by a certain person, made a
contract in writing to pay to him the sum of $5,000 in case he was living at the
end of five years, the contract providing that, if the person should die within
the five years, it should "cease and become null and void, and the premium
paid" thereon should "remain the property of the company." *Held*, that
the contract was not an insurance contract within the definition contained
in R. L. c. 118, § 3, and therefore was not rendered invalid merely by a failure
to comply with the requirements of §§ 65, 71 and 73 of that chapter as to a
medical examination and certain formalities in the application and the con-
tract. *Held, also*, that the contract, which was within the corporate powers
of the company, was valid, not being prohibited by statute and not being
fraudulent or unconscionable.

DE COURCY, J. On February 16, 1905, Samuel D. Jenness,
the plaintiff's testate, who was then fifty-four years of age, ap-
plied to the defendant company for a five year single premium
endowment policy for $5,000. The premium for this policy would
have been $4,636.45. Under it Jenness would have been entitled
to $5,000 if living at the end of five years from its date, and the
beneficiaries named in the application would have been entitled
to that sum in case of his death during the five year period.
After a prescribed medical examination this application was
declined.

Subsequently Jenness made written application for pure en-
dowment the single premium for which was $3,946.25. Pursuant
to this application the defendant issued to Jenness, under date of
March 18, 1905, the contract in controversy, whereby Jenness
was to receive $5,000 if living on March 18, 1910; and it provided
that, if he should die before that time, then and thereupon the
policy should "cease and become null and void, and the pre-
mium paid" thereon should "remain the property of the com-

pany." He kept the policy until his death on April 10, 1909. His executor seeks in this action to recover the premium paid, contending that the contract·is not an insurance policy as defined by R. L. c. 118, and that the defendant was not authorized to make any such contracts in this Commonwealth with a resident thereof. These contentions were embodied in the rulings requested by the plaintiff and refused by the presiding judge,[*] who thereupon directed a verdict for the defendant.

1. R. L. c. 118, § 3, defines a contract of insurance as "an agreement by which one party for a consideration promises to pay money or its equivalent or to do an act valuable to the assured upon the destruction, loss or injury of something in. which the other party has an interest." It also provides that, with certain exceptions not here material, "it shall be unlawful for a company to make a contract of insurance upon or relative to any property or interests or lives in this Commonwealth, or with any resident thereof . . . except as authorized by the provisions of this chapter." This definition, substantially taken from the opinion of this court in *Commonwealth* v. *Wetherbee*, 105 Mass. 149, was adopted by the Legislature in the Massachusetts insurance act of 1887, and has been retained since, the word "loss" being inserted after the word "destruction" in 1897. Sts. 1887, c. 214, § 3; 1894, c. 522; 1897, c. 66. R. L. c. 118, § 3. St. 1907, c. 576, § 3. The contract in question does not provide for payment upon the "destruction, loss or injury" of anything. Under it the defendant assumed the obligation of payment, not upon the destruction or loss during the period named, but upon the continuance of the life of Jenness during that period. It is not what ordinarily is known as an endowment insurance policy, under which the sum named in the policy is payable to the insured himself, if he lives a certain length of time, and in the event of his prior death is payable to his beneficiaries, as in the ordinary life policy. *Carr* v. *Hamilton*, 129 U. S. 252. *Briggs* v. *McCullough*, 36 Cal. 542. *State* v. *Federal Investment Co.* 48 Minn. 110. Such a contract is in reality a combination of a contract of investment and one of term insurance; and it is the kind that Jenness first applied for and which the defendant declined to issue. The plaintiff is right in his contention that the policy in

---

[*] *Hall, J.*

controversy was not a contract of insurance within the scope of our statutory definition.

2. A pure endowment contract, such as that involved in this case, not being a contract of insurance within the definition of R. L. c. 118, § 3, the next question is whether it is an agreement which our laws prohibit an insurance company from making in this Commonwealth. In the case of *Lord* v. *Dall*, 12 Mass. 115, where the legality of a contract of insurance on a life was first decided in this State, Parker, C. J., in delivering the opinion of the court, said: "This is a contract fairly made; the premium is a sufficient consideration; there is nothing on the face of it, which leads to the violation of law; nor anything objectionable on the score of policy or morals. It must, then, be valid to support an action, until something is shown by the party refusing to perform it, in excuse of his non-performance." At that time insurance contracts were usually on marine risks. The system since then has grown and broadened until it now furnishes protection and indemnity in almost every department of business and private life and enterprise. See St. 1907, c. 576, § 32, as amended by Sts. 1908, cc. 248, 509, and 1910, c. 499. Some of these contracts for many years have been a recognized part of the insurance business, although they do not come within our present statutory definition. This is especially true of contracts of pure endowment with return of premium. See *Gould* v. *Curtis*, [1912] 1 K. B. 635; *Prudential Ins. Co.* v. *Commissioners of Inland Revenue*, [1904] 2 K. B. 658; *Carter* v. *John Hancock Mutual Life Ins. Co.* 127 Mass. 153. And one of the well known forms of contract is that of annuities,—not within the technical meaning of the term, or incorporeal hereditaments created by grant,—but in the modern sense of a simple promise to pay a certain amount yearly. There is nothing in such contracts that offends against public policy or any principle of law. *Hayden* v. *Snell*, 9 Gray, 365. *Cahill* v. *Maryland Life Ins. Co.* 90 Md. 333. *Berry* v. *Doremus*, 1 Vroom, 399. As was said by the court in *Mutual Life Ins. Co.* v. *Smith*, 184 Fed. Rep. 1, 4: "We see very little to be urged against insurance of the nature in question, . . . that does not go to the merit of the insurance itself. It is not unnatural that one should act upon the idea that, in the days when he is handling money, it is the part of wisdom to safeguard the period of old age, in which business

and earning capacity will have become a thing of the past. Under modern conditions in the various industries, as well as in business and in official life, men are influenced to enter upon a particular work by various old age safeguards which become operative at the end of a specified period of service." In the Smith case the policies in question provided for deferred annuities, beginning in 1916, if the insured should be alive at that time. But what was there said seems equally applicable to a contract of pure endowment, as an annuity contract in effect is one providing for the payment of a series of pure endowments.

Although, as we have seen, such pure endowment and annuity contracts are not contracts of insurance as defined by R. L. c. 118, § 3, it does not follow that insurance companies are prohibited by our law from writing them. That these companies are not confined to the making of the contracts defined by § 3 above cited is apparent from other provisions of the chapter. Thus § 65 provides:

"All corporations, associations, partnerships or individuals doing business in this Commonwealth under any charter, compact, agreement or statute of this or any other State, involving the payment of money or other thing of value to families or representatives of policy and certificate holders or members, conditioned upon the continuance or cessation of human life, or involving an insurance, guaranty, contract or pledge for the payment of endowments or annuities shall be deemed to be life insurance companies, and shall not make any such insurance, guaranty, contract or pledge in this Commonwealth, or to or with any citizen or resident thereof, which does not distinctly state the amount of benefits payable, the manner of payment and the consideration therefor, nor any such insurance, guaranty, contract or pledge, the performance of which is contingent upon the payment of assessments made upon survivors." This recognition and regulation of policies conditioned upon the "continuance" of life, and of contracts for the payment of "endowments or annuities" is inconsistent with the view that insurance companies are forbidden to make such contracts. The reasonable inference rather is that, subject to the limitations stated, they may be made in this Commonwealth, even though they are not contracts of insurance as defined in § 3. In other parts, also, of the

insurance statute are provisions indicating that annuity contracts, as well as those of endowment, may be written under the Massachusetts law. See R. L. c. 118, § 11, cl. 3; §§ 68, 76. And in the revision of St. 1907 (c. 576), although the definition of R. L. c. 118, § 3, is retained, frequent reference is made to endowment, pure endowment and annuity contracts, as a recognized part of the business of life insurance companies. See, for instance, §§ 11, 69, 75, 76, 81. Section 80, as amended by St. 1908, c. 166, in dealing with the options open to the holder in case of surrender of the policy, provides that "in case of an endowment policy, if the sum applicable to the purchase of temporary insurance shall be more than sufficient to continue the insurance to the end of the endowment term named in the policy, the excess shall be used to purchase in the same manner non-participating paid-up pure endowment, payable at the end of the endowment term on the same conditions." And the same section, as further amended by St. 1910, c. 366, concludes in these terms: "The provisions of this section shall not apply to annuities, or to policies of pure endowment with or without return of premiums, or to survivorship insurance, and, in the case of a policy providing for both insurance and annuity, shall apply only to that part of the contract providing for insurance, but every such contract providing for a deferred annuity on the life of the insured only shall, unless paid for by a single premium, provide that in the event of the non-payment of any premium after three full years' premiums shall have been paid, the annuity shall automatically become converted into a paid-up annuity for such proportion of the original annuity as the number of completed years' premiums paid bears to the total number of premiums required under the contract."

From what has been said it seems clear that while the contract of pure endowment in question is not one of insurance as defined by R. L. c. 118, § 3, nevertheless it is a legal contract and one which the Massachusetts laws do not prohibit an insurance company from making. In form it complies with the requirements of § 65 in distinctly stating "the amount of benefits payable, the manner of payment and the consideration therefor." As it is not a "contract of insurance" within the definition of our statute, the statutory requirements relative to medical examination and to the form of the application are not applicable and need not be considered.

Nor is this a contract that can be rescinded as fraudulent or unconscionable. Jenness must have understood from the express terms of the application that the premium was not to be returned if he should die before the maturity of the pure endowment. The premium was based upon the standard American Experience tables, and the loading added for expenses was less than four per cent. The wisdom of the investment which he carried for more than four years was for him to determine. *Lee* v. *Kirby,* 104 Mass. 420.

Finally, that the making of the contract in controversy was within the charter power of the defendant corporation apparently is not questioned. Its amended charter, adopted under the New York Insurance Law of 1892, provides: "Article III. The business of the company shall be insurance on lives and all and every insurance pertaining to life, and receiving and executing trusts and making endowments, and granting, purchasing and disposing of annuities, such kind of insurance being authorized under subdivision (1) § 70 of the Insurance Law."

We are of opinion that the rulings requested by the plaintiff so far as material were rightly refused. In accordance with the report, the verdict for the defendant is to stand.

*Ordered accordingly.*

*S. M. Child,* for the plaintiff.
*H. L. Shattuck,* for the defendant.

