American State Bank of Bloomington, Executor of Last Will and Testament of Edith Neville, Deceased, Appellant, v. National Life Insurance Company, Appellee.

Gen. No. 9,126.

138

Heard in this court at the April term, 1938.      Opinion filed October 14, 1938.

HAL M. STONE and COSTIGAN & WOLLRAB, both of Bloomington, for appellant.

W. K. BRACKEN and BRACKEN, RADLIFF, LIVINGSTON & MURPHY, both of Bloomington, for appellee; GEORGE B. YOUNG, of Montpelier, Vermont, of counsel.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

Plaintiff, American State Bank of Bloomington, executor of the last will and testament of Edith Neville, deceased, has appealed from a decree of the circuit court of McLean county dismissing its amended bill of complaint against the National Life Insurance Company of Vermont, a corporation, for want of equity. The plaintiff sought to set aside four certain nonrefunding annuity contracts issued at intervals by the defendant company to the annuitant, Edith Neville, during her lifetime, which provided for the payment to her of monthly or quarterly instalments terminating at her death. Plaintiff further sought an accounting and recovery as to the remainder of the single premiums which had been paid by the annuitant to the company at the time of purchasing the annuity contracts in question.

The original complaint alleged that the defendant company is engaged in the business of issuing and selling life insurance policies and annuity contracts; that on September 16, 1935, the plaintiff's testate decedent, Edith Neville, purchased an annuity contract from the defendant company for which she paid a single premium of $1,000, under the provisions of which the defendant promised to pay her $14.50 quarterly during her lifetime; that on January 30, 1936, she again purchased a similar contract for which she paid $1,000,

under the terms of which the defendant promised to pay her $13.78 quarterly during her lifetime; that on May 14, 1936, Miss Neville died, after having received two quarterly payments aggregating $29.20 under the first and one payment of $13.78 under the terms of the second annuity contract.

To this complaint, consisting of two counts, defendant interposed a motion to dismiss which was sustained by the court and a written opinion was filed therein. By leave of court, the plaintiff then filed an amended complaint and in added counts, further alleged that Edith Neville had previously purchased from the defendant company two additional annuity contracts dated respectively May 7, 1935, and July 28, 1935, for each of which she had paid the defendant appellee $10,000. Under the former of these last mentioned contracts, beginning with June 17, 1935, the company had paid to Miss Neville 11 monthly payments of $50.60 each, and under the latter, 10 monthly payments of $50.70 each, making aggregate payments to her during her lifetime of $1,106.58 in compliance with the provisions of the four annuity contracts in question. The defendant's motion to dismiss was then extended to the amended complaint and the added counts thereof and was sustained by the court.

Copies of the four contracts, which were neither long nor involved, were set forth in the complaint and differed only as to dates and amounts. The provisions of the first mentioned contract read as follows:
"Number 645309

"Amount of Each Payment Fourteen 60/100 dollars.

"Payable Quarterly beginning December 16, 1935, and terminating with the last payment preceding the death of the annuitant.

"To Edith Neville, Normal, Illinois, Payee.

"The Annuitant: Edith Neville, Normal, Illinois.

"Purchase Price: One Thousand dollars.

"This Annuity is granted on the declaration that the annuitant was born August 29, 1885, but if such declaration shall be found incorrect, the amount payable under this contract shall be such as the payment to the Company would have purchased at the true age; any overpayment by the Company with interest thereon at five per cent per annum shall be charged against payments to be made thereafter.

"The Company shall be given at each payment date satisfactory evidence that the Annuitant is then alive.

"The Reserve Basis for this contract shall be the Combined Annuity Table with interest at 4%.

"Executed at Montpelier, Vermont, this 16th day of September, 1935."

The first four counts of the complaint, as amended, allege that at the time the contracts were made, Miss Neville was aged fifty years, was "afflicted with incurable maladies" and that this fact was known to the defendant at the time the respective contracts were issued; that the payments therefor were based on an accepted annuity table under which Miss Neville's life expectancy was considered to be 26 years, although it was in fact less than 12 months, and that she died within one year.

In the four remaining additional counts of the amended complaint, plaintiff pleads in the alternative that neither the defendant nor the plaintiff's testate knew of the fact that she was not in a reasonably sound condition of health, nor did they or either of them know that her life expectancy, as determined by the experience of nationally known insurance companies and as determined by standard expectancy tables and upon which the purchase price of such annuities was based, was of so short a duration, nor did either of them know at the time of making said contracts that it was and would be impossible that said annuitant should ever receive a fair return for the money invested.

This suit is based on the contention that the consideration to Miss Neville under each of the four contracts was so grossly inadequate as to "shock the conscience" and to constitute fraud as a matter of law and that the writing of the annuities in question based on a normal expectancy life table, without reference to the actual expectancy of the individual purchaser, was contrary to public policy. To this is added in the last four counts the further alternative claim that there was a mutual mistake of fact when the contract was entered into by the parties as to the condition of health and expectancy of life of the annuitant which was unknown to both parties and which is an alleged basis for rescission of the annuity contracts.

The defendant's motion to dismiss the complaint alleged in substance that the complaint fails to charge that Edith Neville was mentally incompetent to any degree; fails to charge fraud, deceit, misrepresentation, overreaching, imposition or misconduct upon the part of anyone which induced or contributed to the purchase of the annuities in question; that it appears that annuitant was entirely competent and understood the terms and conditions of and for the contracts in question; knew what she was purchasing and received what she wanted and intended to buy; that she was satisfied with the contracts and ratified them in all respects by accepting payments thereunder and according to their terms until the time of her death; that the complaint set forth no allegation of facts as a basis for the conclusion of the pleader that she "was afflicted with incurable maladies"; that none are named, set forth or described in the pleadings; that the statement that her life expectancy would not exceed 12 months is a mere conclusion of the pleader and that no facts whatever are set forth upon which to base the same; that no facts are set forth indicating the contracts to have been fraudulent or against public policy; that the complaint does not allege or state any legal or equitable cause

of action; and that the added counts charging that neither party knew of her condition or of the period of her expectancy does not set forth added facts or grounds which state a cause of action.

In passing upon the sufficiency of the amended complaint, it must be borne in mind that motions to dismiss in the nature of demurrers admit facts well pleaded but do not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. *Rishel v. Pacific Mut. Life Ins. Co. of Calif.,* 78 F. (2d) 881; *Spielman Motor Sales Co. v. Dodge,* 295 U. S. 89; *Knaus v. Chicago Title & Trust Co.,* 365 Ill. 588, 593, 7 N. E. (2d) 298; *Harrigan v. County of Peoria,* 262 Ill. 36, 104 N. E. 172.

"General allegations that defendants' conduct was fraudulent or that the contracts were procured by duress, or that a fiduciary relationship existed, etc., are not admitted by the demurrers. The question is: Do the facts alleged support such conclusions? *Rishel v. Pacific Mut. Life Ins. Co. of Calif., supra.*

Appellant concludes that the expectation term of life of the deceased was less than one year. From what facts or upon what specific table does this conclusion rest? We would be reluctant to assume the existence of any table issued by an insurance company in which the life expectancy of applicants for either insurance or annuity contracts at the attained age of 50 years is given as less than 12 months. Certainly, no such table is set out in the complaint as an exhibit or otherwise, and no specific facts are set forth from which this conclusion of the pleader would follow. Obviously, the recital that one is "afflicted with incurable maladies" or in bad health, without any description of the nature, kind or extent of such ailment does not plead facts that would classify an applicant as falling under any specific table of expectancy. It is a matter of common

knowledge that many persons who do not enjoy good health or who suffer from "incurable maladies" may and do live out a normal expectation period of life. The conclusion as to her actual expectancy cannot be based upon the fact that she did not live out a normal expectation period of life. As is said in *Rishel v. Pacific Mut. Life Ins. Co. of Calif., supra,* "Annuity contracts could not be written by financially responsible companies if a recovery of the premuim *pro tanto* could be had upon proof after death of some impairment of the organs when the contracts were written." The court in that case, as herein, was speaking of non-refunding annuity contracts.

The validity of each contract must be determined as of the time it was written. (*Rinn v. New York Life Ins. Co.,* 89 F. (2d) 924.) The allegations showing that the annuitant collected a limited number of payments under each of the annuity contracts and that she then departed this life does not state facts which tend to support the conclusion that at the time of *entering into the contract* she was "afflicted with incurable maladies," nor that the consideration was either unconscionable or grossly inadequate. Nothing is alleged in the complaint as to the nature of her ailment or as to the cause of her death, which might, so far as appears from the complaint, have as well been due to accident or casualty as to bodily disease or impairment.

It is further alleged in the first four counts that the defendant knew that the annuitant was not in sound health and that her tenure of life was uncertain, but it is not alleged that the annuitant was not equally aware of her alleged condition, while in the last four counts, it is alternatively alleged that neither party knew of these conditions. It is nowhere alleged that the defendant in any manner undertook to mislead, conceal from, misrepresent or deceive the annuitant as to her life expectancy or physical condition. Moreover, it

will be noted that there was a considerable lapse of time between the dates when the several contracts were written and entered into by the annuitant, in which she may have ascertained any of these facts had she been dissatisfied or disposed to do so, and that thereafter she continued to receive and accept the annuity payments under all of the contracts until the time of her death. It is not alleged that between these dates and during all of this period while she so continued to accept the annuities, she did not know or was in anywise unaware of her alleged "incurable maladies" or of her alleged period of expectancy or that she was in any respect dissatisfied with or sought rescission of any of the contracts in question.

It further appears that the premium was the usual and customary rate payable by persons of the annuitant's attained age. The consideration of annuity contracts written on standard mortality tables is prima facie adequate and fair. *(Rishel v. Pacific Mut. Life Ins. Co., supra.)* Whether or not a medical examination was had before the contracts were issued does not appear from the pleadings. If the annuitant had desired a medical examination before contracting, nothing prevented her from having such examination made. While a medical examination is usually had before the issuance of life insurance policies, which are the reverse of annuity contracts, the life insurance policy is valid even if written without a medical examination, and many are so written. As stated by the court in the *Rishel* case, *supra:* "Plaintiff's contention comes to this, that an insurance company is bound to inquire, by medical examination or otherwise, into the health of an applicant for an annuity. Except where a fiduciary relationship exists, no statute or no case has been cited so holding. . . . In annuities, the annuitant is the one who is interested in knowing that his health is normal before entering into the contract; he

knows or can ascertain the state of his own health, and there is no reason why an insurance company should require him to ascertain the condition of his own health before contracting with him. If the annuitant, for his own protection, wants a medical examination before contracting, nothing prevents him having one. These contracts cannot be stricken down because defendants did not require Mrs. Tew to take examinations for her own protection. The argument is unsound, and the analogy breaks down, for another reason: A life insurance policy is valid even if written without a medical examination, as many of them are."

The primary purpose and effect of taking the annuity contracts was to guarantee the annuitant the benefit of a fixed income during the remainder of her life, whether she was or was not in good health, and whether or not a medical examination and classification was first made. To hold otherwise would virtually deny this form of investment to many people for whom it might prove a practical and helpful relief from business cares. Annuity contracts issued by insurance companies are issued upon a basis that will establish a reserve necessary to meet all contracts as they mature. This fact was recognized by the parties and set forth in the contracts in the following language: "The Reserve Basis for this contract shall be the Combined Annuity Table with interest at 4%." This table does not refer to nor undertake to fix the premium rates, but does establish the reserve basis.

Whether an annuitant of sound mind and acting under no legal disability or restraint purchases or desires a nonrefunding form of annuity contract or one providing for the return in lesser amounts of a definite number of additional instalments after her death is entirely a matter of contract and freedom of choice between the parties, in the absence of allegations showing fraud, lack of mental capacity or that she was

improperly influenced, deceived or mislead by the defendant whereby her well considered judgment was disturbed or overcome.

Concerning the validity of annuity contracts in general, plaintiff seems to concede, and the Supreme Court of this State has held that "there is nothing in such contracts opposed to any principle of law or public policy." *Fidelity Inv. Ass'n v. Emmerson,* 318 Ill. 548, 560, 149 N. E. 530. The ordinary form of an annuity contract, whereby, in consideration of a single payment or a series of payments running through a number of years, a person or corporation agrees to pay at a fixed time a definite sum of money or pay a definite sum in fixed instalments at certain times is not opposed to any principle of law or public policy. Courts cannot determine the wisdom of entering into the contract by any person or class of persons nor the amount to be returned to the investor under the contract in the absence of fraud or other legal or equitable grounds rendering the same void or voidable. *Fidelity Inv. Ass'n v. Emmerson, supra; Curtis v. New York Life Ins. Co.,* 217 Mass. 47, 104 N. E. 553; *Greevy v. Massachusetts Mut. Life Ins. Co.,* 128 Neb. 586, 259 N. W. 656; *Mutual Life Ins. Co. of N. Y. v. Smith,* 106 C. C. A. 593, 184 Fed. 1, 33 L. R. A. (N. S.) 439.

In the case of *Curtis v. New York Life Ins. Co., supra,* it is said that an annuity contract, not being a contract of insurance, was not within the insurance law, and not having been prohibited by any law of the State was valid and enforceable. Similarly, we know of no law in the State of Illinois prohibiting annuity contracts, and their validity has been recognized by both the statutes and Supreme Court of this State. (*Fidelity Inv. Ass'n v. Emmerson, supra.*) But it is earnestly contended by the appellant that while there is nothing illegal or against public policy in the writing of annuity contracts in general, under the allegations

of the complaint herein the issuance of the particular contracts were against public policy. We cannot hold that facts are stated from which such a conclusion of the pleader would follow.

The public policy of a State is to be found embodied in its constitution and its statutes, and when these are silent on the subject, then in the decisions of its courts. *People v. Wiersema State Bank,* 361 Ill. 75, 86, 197 N. E. 537; *Illinois Bankers Life Ass'n v. Collins,* 341 Ill. 548, 173 N. E. 465.

Appellant states his position as follows: "The contention is *not* that all annuity contracts are contrary to public policy. It is contended that non-refunding annuity contracts, the consideration for which is based upon normal expectancy issued without any regard to what the actual expectancy of the annuitant as determined by experience and impairment tables, are contrary to public policy." This contention, based upon the conclusions of the pleader, would by judicial fiat, require medical examination and classification in a large class of annuity contracts now in general use and effect by and between a great number of legal reserve insurance companies and contract holders; matters, grave and far-reaching in effect, that would seem to fall more properly within the field of legislative regulation than of judicial construction.

Since the argument of counsel alleging gross lack of consideration and that the contracts as written were opposed to public policy were so interwoven as to lead this court to discuss the applicability of both principles, it is nevertheless true, as stated by appellee, that the appellant has failed in his assignment of errors to assign any error relied upon for reversal on the ground that the contracts as written were contrary to public policy. Errors relied upon for reversal must be assigned. *Farmers State Bank v. Meyers,* 282 Ill. App. 549. It is provided by Rule 9 of this court as to

briefs that "the concluding subdivision of the statement of the case shall be a brief statement of errors or cross errors relied upon for a reversal."

Appellant further contends that "where the consideration for a contract is so grossly inadequate so as to shock the conscience . . . a court of equity will set it aside; that in such cases fraud is conclusively presumed to exist." It must be kept in mind, however, that it is a well recognized general principle of law in this State that fraud is never presumed, that it must always be proved and sufficient facts must be pleaded from which such conclusions will logically follow. *Garrett v. Garrett,* 343 Ill. 577, 580, 175 N. E. 772; *Byerly v. Byerly,* 363 Ill. 517, 524, 2 N. E. (2d) 898; *American Hoist & Derrick Co. v. Hall,* 208 Ill. 597, 70 N. E. 581; *Woodford County Nat. Bank v. Conklin,* 292 Ill. App. 53, 10 N. E. (2d) 864.

Much of what has been said herein applies with equal force to the appellant's contention that the consideration received by the annuitant from the company was so grossly inadequate as to conclusively establish fraud as a matter of law. From the allegations of fact set forth in the complaint we cannot so hold. Nor do we find that the facts set forth would justify relief by rescinding the contracts on the ground of mutual mistake, which latter assignment is not stressed in argument by the appellant in his brief.

The *Rishel* case, *supra* (Sept. 1935) seems to be the leading modern authority wherein annuity cases, both early and recent, are collated, summarized and distinguished, and from which both counsel have cited freely. Concerning this case, it is said in *Rinn v. New York Life Ins. Co., supra,* that the opinion of the court in the *Rishel* case "so aptly applies that we would unnecessarily and improperly add to the volume of reported judicial opinions if we were to restate the reasons and conclusions of that case. We accept that

opinion as embodying the correct statement of the applicable law." In the case at bar, we also deem the *Rishel* case to be more nearly parallel in facts and controlling in principle than any of the other cases cited by counsel herein.

It is said in the *Rishel* case that "Although not in itself determinative, it is worthy of note that in each of the American cases, the contract was based on published tables of average lives, while that was not so in the English cases cited. The consideration of annuity contracts written on standard mortality tables is prima facie adequate and fair."

In that case the plaintiff sought rescission and recovery of the sums paid by way of single premiums for six annuity contracts. A demurrer was interposed and sustained, from which the appeal was taken. The facts are summarized in the opinion as follows: "The Health of the Annuitant: — It is alleged that Mrs. Tew was sixty years old past in July, 1928, when she applied for the first annuity; that she was of weak and impaired mind, inexperienced in business, in feeble health, suffering from dropsy, a weak heart, a diseased stomach and abdomen, that her illness was permanent and she had no reasonable chance to recover; that her expectancy was less than seven years, instead of 14 years, the average expectancy at the attained age. . . . On the whole case: — Considered ensemble instead of separately, as was done in *Allore v. Jewell, supra* (94 U. S. 506, 510, 24 L. Ed. 260) do the complaints state a case justifying the interposition of equity? In 1928 Mrs. Tew, a widow suffering from ailments not uncommon among the elderly, paid $28,321.20 for an annuity contract, from which she received a regular income of $200 a month. Apparently she thought well of the idea, and in 1930 and 1931 she invested $65,000 more in similar contracts with the same and three other companies. Her reasons, we do not know. Perhaps

she wanted a larger income than the returns available from safe investments; perhaps she wanted to escape the responsibility of investment. In any event, she entered into the contracts with nationally known companies on their regular rates. Whether she took the precaution to be physically examined, whether she took independent advice, we do not know. She died shortly thereafter, but the cause of her death is not related. No fraud, no misrepresentation, no duress, is charged. Plaintiff's case comes down to the points that an insurance company bears a fiduciary relationship to applicants for contracts, and that a company must inquire, at its peril, into the health of an applicant for an annuity. We are not in accord with that view of the law and are cited to no authority so holding. On the whole case, therefore, we see no reason for overturning these contracts, fairly made, because Mrs. Tew unfortunately died before she expected.''

It may well be conceded that cases may arise wherein the facts and allegations are sufficient to warrant such relief. As stated in the *Rishel* case, ''if the consideration is so grossly inadequate as to repel the conscience of the Chancellor, equity may refuse its aid in enforcement.'' Aside from the old English cases cited and summarized in the *Rishel* case (*Heathcote v. Paignon,* 2 Br. Ch. 167, 29 Eng. Rep. 96; *Gwynne v. Heaton,* 1 Br. Ch. 1, 28 Eng. Rep. 949), the appellant has most freely quoted from *Mangold v. Bacon,* 237 Mo. 496, 141 S. W. 650, in which a sheriff's deed was set aside on the sole ground of a consideration so grossly inadequate as to shock the conscience. These and other authorities cited by the appellant, we do not deem to be applicable or controlling under the facts and allegations of the complaint herein.

The case of *Rinn v. New York Life Ins. Co., supra,* was a suit brought in the United States District Court in Illinois by the administrator of an annuitant's es-

tate, seeking recovery of the balance of the premiums not consumed in payments to annuitant during his lifetime. It was there said that: "Appellee, on May 21, 1930, issued to appellant's intestate an annuity policy in consideration of a single premium payment of $48,794.40. It paid insured $300 per month from June 14, 1930, until April 14, 1934, or a total of $14,100. This left a difference of $34,694.40 between the amount of the premium received and the annuities paid. The insured's administrator, the appellant, seeks to recover this amount with interest. The District Court (U. S.) sustained a motion to dismiss the causes of action in equity and at law. . . . The conscionableness of an insurance contract is to be determined as of the date of its execution. Insured was 53 at the time of the issuance of the policy, and had he lived 14 years . . . he would have received sums equal to the premium by him paid. According to the mortality tables he had a life's expectancy of 19½ years. The judgment is affirmed."

In the case of *Coyne v. Pacific Mut. Life Ins. Co.*, 8 Cal. App. (2d) 104, 47 P. (2d) 1079 (June 26, 1935), a nonrefunding life annuity contract was issued on May 9, 1932, for a single premium of $10,000, the annuitant to receive monthly payments of $90.10. The death of the annuitant by suicide occurred on May 26, 1932, before the first payment became due under the annuity. While a total failure and not gross inadequacy of consideration was charged in that case, we deem the reasoning of the court as to facts alleged to be pertinent herein. The court said: "It is next urged that there was a total failure of consideration for this contract, since the intestate died before any payments thereunder became due. . . . Annuity contracts of this nature are common and have been frequently upheld and approved by the courts. The value and purpose of such a contract are well summarized in

*Hult v. Home Life Insurance Co.*, 213 Iowa 890, 240 N. W. 218, 227, where the court said: '. . . Experience has shown, particularly in the last few years, that even those who consider themselves skilled in investments have found it impossible to recover reasonable rates of interest on their investments, and equally impossible to save much, if any, of the principal. With her annuity contracts in her possession, the deceased was relieved of all worry about interest, and likewise of worry about her original investment. Both were secured to her for the entire period of her life, whatever it might prove to be.' The contention that there was no consideration for this contract because the death of the annuitant occurred before any payments to him became due is entirely without merit. The respondent had agreed to pay $90.10 to him each month so long as he lived, and this agreement constituted an ample consideration. The fact that death occurred before any such payments became due does not change the situation and the intestate ran the risk of such an event just as the respondent ran the risk that the contract might turn out to be unprofitable to it in the event the other party thereto outlived his normal expectancy.''

In the case of *Cahill v. Maryland Life Ins. Co.*, 90 Md. 333, 45 Atl. 180, 47 L. R. A. 614, the court (p. 616) said: ''It is conceded that the annuity was promptly paid during her life, and, as was suggested at bar if she had lived sixteen years to enjoy the annuity, instead of only sixteen months, it is not likely this suit would have been brought.''

While the trend of the law in general is toward a kinder and more liberal application of its principles, it is equally well recognized that there exists a need for stability and compliance with reasonable and well established practices, particularly in a field which so closely and vitally affects the interests of so many

people as does that of annuities and insurance contracts.

In the absence of any allegations that the plaintiff's decedent was in any way incompetent, or that any actual fraud, misrepresentation or concealment was practiced on her, or of any fiduciary relationship between the parties, or that the defendant had any knowledge of her physical condition which she herself did not or could not have had if she had so desired either before or after purchasing the contracts, their silence as to the nature of her infirmities or the cause of her death, together with the construction which the courts have placed on annuity contracts and the duties and obligations of the companies with reference thereto, we are lead to affirm the conclusion of the trial court that the complaint did not state a cause of action. We have further examined and considered all other errors assigned, and we find that no reversible error appears in the record.

The decree of the lower court will be affirmed.

*Decree affirmed.*